**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | In Proceedings Under Chapter 11 |
| | ) | |
| **DOUBLE HELIX CORPORATION,** | ) | Case No.: 25-40745 |
| d/b/a KDHX COMMUNITY MEDIA, | ) | |
| | ) | |
| Debtor. | ) | |

**EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS**
**AUTHORIZING DEBTOR TO OBTAIN POST-PETITION**
**FINANCING PURSUANT TO 11 U.S.C. §§ 364(c) and (d)**

COMES NOW Debtor Double Helix Corporation, d/b/a KDHX Community Media ("**Debtor**"), by and through its undersigned counsel, and files its *Emergency Motion for Interim and Final Orders Authorizing Debtor to Obtain Post-petition Financing Pursuant to 11 U.S.C. §§ 364(c) and (d)* (the "**Motion**"). In support of the Motion, Debtor respectfully states as follows.

## BACKGROUND AND JURISDICTION

1. On March 10, 2025 (the "**Petition Date**"), Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**"). Debtor continues to operate its business as debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. No trustee or examiner has been appointed in this case.

2. Information concerning the Debtor's business, its capital and debt structure, and the events leading up to the filing of this Chapter 11 Case is set forth in the Declaration of Kelly K. Wells (the "**Wells Declaration**"), filed contemporaneously herewith.

3. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Debtor consents to the entry of a final order of this Court in connection with the Motion.

**RELIEF REQUESTED**

4. By this Motion, Debtor seeks the entry of an interim order substantially in the form of the "**Interim Order**" delivered to the Court and a final order (the "**Final Order**" and both such orders, the "**DIP Orders**"), pursuant to sections 105, 361, 362, 363, 364, 503, 506(c) and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the Local Rules of Bankruptcy Procedure for the Eastern District of Missouri (the "**Local Bankruptcy Rules**").

5. Debtor seeks authorization to obtain post-petition financing (the "**DIP Loan**") from K-LOVE, Inc., a Tennessee nonprofit corporation (the "**DIP Lender**") in the aggregate amount of up to $500,000.00 pursuant to sections 364(c) and (d) of the Bankruptcy Code.

6. As stated in the Wells Declaration, the DIP Loan is necessary to provide the necessary liquidity to fund Debtor's operations during the pendency of the Chapter 11 Case and to ensure Debtor's ability to reorganize, including (a) the payment of administrative expenses associated with the Chapter 11 Case, including but not limited to professional fees (the "**Administrative Expenses**"), and (b) the payment of operating expenses and ordinary course of business payments associated with Debtor's business operations, including but not limited to ongoing post-petition employee payroll and pre-petition employee payroll not in excess of the statutory ceiling (the "**Operating Expenses**" and collectively with the Administrative Expenses, the "**DIP Expenses**"). Satisfaction of these DIP Expenses is necessary to preserve and maintain the value of Debtor's estate pending a potential future sale. In particular,

7. The key terms of the DIP Loan are as follows:

   a. **Loan Amount**: In the aggregate amount of up to $500,000.00, funded in two tranches:

   i. $150,000.00 upon entry of an interim order approving the DIP Loan; and

   ii. $350,000.00 upon entry of a final order approving the DIP Loan.

 b. **Effective Date**: The earliest of:

   i. Execution of the DIP Loan Documentation by Debtor and DIP Lender; or

   ii. Release of the net proceeds to Debtor after entry of the Interim DIP Order.

 c. **Maturity Date**: The earliest of:

   i. The closing of the sale of the Debtor's assets; or

   ii. The occurrence and declaration of an event of default.

 d. **Interest Rate**: 12% per annum, payable on the Maturity Date, with interest waived if the DIP Lender is the successful purchaser of the contemplated sale.

 e. **Facility Fee**: 3% of the principal amount, fully earned on the Effective Date and payable on the Maturity Date, waived if the DIP Lender is the successful purchaser of the contemplated sale.

 f. **Priority and Collateral**: The DIP Loan will have super-priority status and will be secured by a first-priority lien on all of the Debtor's assets, subject only to a carve-out for certain administrative expenses, and the valid and perfected mortgage in existence as of the Petition Date.

 g. **Administrative Carve-Out**: The DIP Lender's liens and administrative claims shall be subject to a carve out (the "**Carve-Out**") of prior payment of attorneys' fees for Debtor's counsel and United States Trustee's Fee in an aggregate amount not to exceed $50,000.00.

 h. **Use of proceeds**: The proceeds of the DIP Loan shall be used for general corporate expenditures, funding operations, and facilitating the sale process. No proceeds shall be used for any litigation against the DIP Lender.

Documentation of the terms of the DIP Loan are set forth in further detail in the certain Debtor-in-Possession Financing Term Sheet dated March 10, 2025 (the "**Term Sheet**"), a true copy of which Term Sheet is attached hereto as **Exhibit 1** and incorporated herein by this reference. The Term Sheet sets forth the material terms of the proposed post-petition financing. To the extent that any provision of this Motion conflicts with or is ambiguous in relation to the Term Sheet, the terms of the Term Sheet shall govern and control.

### SECURED LENDER AND ADEQUATE PROTECTION

8. Upon information and belief, there are two existing, valid, and perfected liens (the "**Existing Liens**") upon Debtor's real property located at 3524 Washington Avenue, St. Louis,

3

Missouri 63103 (the "**Real Estate**"), held by The Kenneth Kranzberg Revocable Trust (the "**Kranzberg Trust**") and 3526 Washington LLC, a Missouri limited liability company ("**3526 Washington**" and together with the Kranzberg Trust, the "**Existing Secured Lenders**"). The Existing Secured Lenders are the only secured lenders with a lien on Debtor's assets as of the Petition Date, and the Existing Liens are the only such liens.

9. The DIP Loan, as authorized under 11 U.S.C. § 364(d), shall prime all assets of the Debtor except for the Carve-Out and the Real Estate securing Existing Secured Lenders' liens. The Existing Liens held by the Existing Lenders shall remain senior to the DIP Loan and will receive adequate protection to ensure that their interests are not diminished as a result of the DIP Loan. The form and amount of adequate protection shall be determined by agreement between the parties or as ordered by the Court.

## BASIS FOR RELIEF

10. Section 364 of the Bankruptcy Code permits a debtor, after notice and hearing, to obtain credit secured by a lien on property of the estate, or with priority over administrative expenses, when such credit is necessary to preserve the estate. 11 U.S.C. § 364(c).

11. Pursuant to Section 364(d)(1) the Court may also authorize a debtor to obtain credit secured by a priming lien that is senior or equal to existing liens if the debtor is unable to obtain alternative financing and interests of existing lien holders are adequately protected. 11 U.S.C. § 364(d).

12. In the Chapter 11 Case, the DIP Loan is the only available financing, and Debtor has demonstrated that the sole existing lienholder's interests held by the Existing Lenders are adequately protected given the contemplated sale process.

13. The Court's approval of the DIP Loan will facilitate Debtor's reorganization efforts and preservation of its ongoing business enterprise. Absent the relief sought in this Motion, Debtor faces the very real risk of substantial disruption in its operations and inability to preserve its assets.

14. Further, absent interim relief, Debtor's efforts to retain its value as a going-concern will be immediately and irreparably jeopardized.

15. Bankruptcy Rule 4001(c) permits a court to approve a debtor's request for financing during the 15-day period following the filing of a motion requesting authorization to obtain post-petition financing "only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing." FED. R. BANKR. P. 4001 (c)(2). In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions. *See, e.g. In re AMR Corp.*, 485 B.R. 279, 287 (Bankr. S.D.N.Y 2013) (reasonable business judgment exercised "so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party in interest.") (citations omitted). Provided that a debtor's business judgment does not run afoul of the letter and spirit of the Bankruptcy Code, the courts will typically grant a debtor considerable deference to exercise its sound business judgment in obtaining such credit. *See In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) (noting that approval of post-petition financing requires, *inter alia*, an exercise of "sound and reasonable business judgment.")

16. Here, the facts and circumstances present in this Chapter 11 Case demonstrate that Debtor has amply satisfied the necessary conditions under sections 364(c) and (d) of the Bankruptcy Code to enter into the proposed DIP Loan financing. The DIP Loan is fair and reasonable and is the best available financing option for the Debtor and an exercise of the Debtor's

5

sound and reasonable business judgment. The DIP Loan will allow the Debtor to continue operations, preserve value for creditors, and facilitate the sale of assets. Moreover, Debtor submits that no harm or prejudice will result to any party, including the Existing Lenders, from the DIP Loan given its terms.

## RESERVATION OF RIGHTS

16. The DIP Lender reserves all rights to challenge the Carve-Out in the event the Chapter 11 Case is dismissed prior to entry of the Final Order on this Motion or should this Motion otherwise be denied. The reservation extends broadly to any obligations arising under the DIP Loan or its associated documentation.

## NOTICE

17. Notice of this Motion has been provided to all parties-in-interest including including: (i) Office of the United States Trustee for the Eastern District of Missouri, (ii) the holders of the 20 largest unsecured creditors, (iii) Debtor's secured lenders and agents, and (iv) all parties that have requested notice in the Chapter 11 Case pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, Debtor submits that no other or further notice is required.

WHEREFORE Debtor Double Helix Corporation, d/b/a KDHX Community Media, respectfully prays this Court enter the DIP Orders granting the relief requested herein, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

CARMODY MACDONALD P.C.

By: /s/ *Robert E. Eggmann*
Robert E. Eggmann #37374MO)
Nathan R. Wallace (#74890MO)
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
(314) 854-8600
(314) 854-8660 – FAX
ree@carmodymacdonald.com
nrw@carmodymacdonald.com

ATTORNEYS FOR DEBTOR