**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | In Proceedings Under Chapter 11 |
| | ) | |
| **DOUBLE HELIX CORPORATION,** | ) | Case No. 25-40745-659 |
| d/b/a KDHX COMMUNITY MEDIA, | ) | |
| | ) | Mtn. ___ |
| Debtor. | ) | |
| | ) | Hearing Date: April 16, 2025 |
| | ) | Hearing Time: 10:00 a.m. |
| | ) | Hearing Location: Courtroom 7 North |
| | ) | Objection Deadline: April 15, 2025 |
| | ) | at 5:00 p.m. |

**MOTION FOR AN ORDER: (A) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE NON-REAL ESTATE ASSETS OF DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS TO K-LOVE, INC., PURSUANT TO 11 U.S.C. § 363(f); (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH; AND (C) GRANTING OTHER RELIEF RELATED TO THE PROPOSED SALE**

COMES NOW Debtor and Debtor in Possession Double Helix Corporation, d/b/a KDHX Community Media ("**Debtor**"), by and through their undersigned counsel, pursuant to Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and files this *Motion for an Order: (A) Authorizing the Sale of All or Substantially All of the Non-Real Estate Assets of Debtor Free and Clear of All Liens, Claims, Encumbrances, and Interests to K-LOVE, Inc., Pursuant to 11 U.S.C. § 363(f); (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection Therewith; and (C) Granting Other Relief Related to the Proposed Sale* (the "**Motion**"). In support of this Motion, Debtor respectfully states as follows:

**Jurisdiction and Venue**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Debtor consents to the entry of a final order of this Court in connection with the Motion.

**Introduction**

2. On March 10, 2025 (the "**Petition Date**"), Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**"). Debtor continues to operate its business as debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. No trustee or examiner has been appointed in this Chapter 11 Case.

3. Debtor is a nonprofit Missouri corporation currently doing business as KDHX Community Media. Since 1987, Debtor has operated KDHX FM radio station ("**KDHX**") as an independent, non-commercial, educational, listener-supported community radio broadcast station in St. Louis, Missouri.

4. KDHX's business operations involve the use of substantial broadcasting and transmitting equipment (collectively, the "**Equipment**"), a transmitting tower (the "**Tower**"), other assets located at KDHX's Tower site location (the "**Tower Site**") and at the studio building located at 3524 Washington Ave., St. Louis, MO 63103 (the "**Real Estate**" and collectively with the Equipment, the Tower, and all other assets found at either location, the "**Assets**"). The Tower Site is subject to an unexpired ground lease (the "**Lease**").

5. Since the station's inception, Debtor has operated KDHX as a radio broadcast station pursuant to licenses i (the "**FCC Licenses**") issued to it by the Federal Communications Commission ("**FCC**") and is subject to the FCC's regulatory jurisdiction under the United States

2

Communications Act of 1934, United States Code title 47, section 151, *et seq.*, as amended and the rules, regulations, decisions and published policies of the FCC (the "**Communications Laws**").

6. In order to maintain its current FCC Licenses, KDHX must provide continuous on-air non-commercial educational radio programming. Due to recent personnel cuts, KDHX has been forced to utilize previously recorded radio programming.

7. Since the onset of its financial difficulties, Debtor has remained open to a sale of all or substantially all of its non-real estate assets as a going concern, and prior to the Petition Date, Debtor began actively marketing the Assets for a potential private sale.

8. Debtor received a pre-petition offer from K-LOVE, Inc. ("**K-LOVE**" or "**Buyer**"), a Tennessee non-profit 501(c)(3) organization and the sole member of Educational Media Foundation ("**EMF**"), to purchase all or substantially all of its non-real estate assets as a going concern (the "**Proposed Sale**"). The Proposed Sale will include all of the Assets other than the Real Estate.

9. K-LOVE and EMF own and operate the nation's two largest Christian music radio networks (K-LOVE and Air1) with over 1,000 broadcast signals across all 50 states. The FCC has reviewed numerous applications with both K-LOVE and EMF as applicants and has previously determined that both K-LOVE and EMF qualify as non-commercial entities providing qualifying educational programming (*see, e.g.*, FCC File No. BPED-19980106MA and FCC File No. 0000263016). Since K-LOVE's qualifications to be an FCC licensee are well established as a matter of public record, Debtor and K-LOVE believe K-LOVE is qualified to obtain the FCC approval required to complete the Proposed Sale.

10. As set forth in greater detail in the Declaration of Kelly K. Wells in support of this Motion (the "**Wells Declaration**"), filed contemporaneously herewith, Debtor believes that the sale of all or substantially all of its non-real estate assets as a going concern to K-LOVE pursuant to section 363 of the Bankruptcy Code is in the best interest of Debtor, its creditors and other parties-in-interest.

11. Debtor's Board of Directors and the Associate members voted to approve the Proposed Sale in accordance with a vote which took place on March 3, 2025.

12. On or about February 21, 2025, Debtor executed a Letter of Intent (the "**LOI**") for the purchase of all or substantially all of Debtor's non-real estate assets and for Debtor to assume and assign the Lease to K-LOVE (the "**Acquired Assets**"). Thereafter, the parties negotiated and executed a certain Asset Purchase Agreement dated March 24, 2025 (the "**APA**"), incorporating the LOI and setting forth the terms of the Proposed Sale. A true copy of the APA is attached hereto as **Exhibit 1** and incorporated herein by this reference.

13. Consummation of the Proposed Sale is contingent upon (a) this Court's approval of the sale to Buyer, (b) the assignment of the FCC Licenses for KDHX to K-LOVE, which requires prior approval of FCC pursuant to the Communications Laws and (c) Debtor's assumption of the Lease as part of the Chapter 11 Case and thereafter Debtor's assignment and K-LOVE's assumption of the Lease. As part of the FCC approval process, the FCC must determine that the prospective purchaser of a broadcast license meets the requisite citizenship, character, financial, technical and other qualifications to hold licenses under the Communications Laws.

## Relief Requested

14. By this Motion, Debtor seeks the entry of an order (the "**Sale Order**"), following a final hearing (the "**Sale Hearing**") to be scheduled by the Court (a) authorizing the Proposed Sale

4

by Debtor of the Acquired Assets, including the assignment of the FCC Licenses to Buyer pursuant to the APA, free and clear of all liens, claims, and encumbrances, and (b) authorizing and approving the assumption by Debtor and assignment to Buyer of the Lease (which is the sole executory contract and unexpired lease included among the Acquired Assets).

### The Proposed Sale

15. The Proposed Sale shall be for a purchase price in the amount of $4,350,000.00 in cash (the "**Base Purchase Price**"). The Base Purchase Price shall be subject to adjustment and increase by $500,000.00 in the event the closing of the Proposed Sale contemplated by this Motion (the "**Closing**") occurs on or before September 24, 2025. Alternatively, if Closing occurs between September 25, 2025 and March 24, 2026, the Base Purchase Price under the APA will increase by $250,000.00. The Base Purchase Price as may be adjusted herein (the "**Purchase Price**") includes the assumption of certain assumed liabilities (the "**Assumed Liabilities**," as more fully and completely described in the APA and which shall include the post-closing obligations under the Lease).

16. The Proposed Sale is contingent upon: (a) the entry of a final and non-appealable Sale Order by this Court approving the Proposed Sale of the Acquired Assets and assignment of the FCC Licenses and Lease free and clear of all liens pursuant to section 363(f) of the Bankruptcy Code; (b) a finding by this Court that K-LOVE is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code; and (c) the approval by the FCC of the assignment of the FCC Licenses to K-LOVE.

17. The Proposed Sale has been negotiated at arms-length and constitutes a good faith offer to purchase in accordance with section 363(m) of the Bankruptcy Code.

18. The APA represents the highest and best offer for the Acquired Assets, and Debtor's decision to consummate this transaction as a sale is justified.

**Sale of Assets Pursuant to Section 363 of the Bankruptcy Code**

19. Debtor requests that the Court authorize the sale of the Acquired Assets pursuant to section 363 of the Bankruptcy Code free and clear of all liens, claims, and encumbrances, with such liens, claims, and encumbrances to attach to the sale proceeds.

20. Section 363(b) of the Bankruptcy Code authorizes the sale of property of the estate other than in the ordinary course of business after notice and a hearing. A sale of assets outside the ordinary course of business is a matter within the Court's discretion. Courts generally permit a debtor to sell property of the estate outside of the ordinary course where the proposed sale is a sound exercise of the debtor's business judgment and when such sale is for fair and reasonable consideration and is in good faith. *See, e.g., In re Trilogy Dev. Co., LLC*, Case No. 09-42219, 2010 Bankr. LEXIS 5636, at *3-4 (Bankr. W.D. Mo., Aug. 31, 2010) ("The court should approve a use, sale or lease of property under Bankruptcy Code Section 363(b) if the debtor has established some articulated business justification for the proposed transaction."); *In re Channel One Comm., Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990) (citing *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983)); *In re The Landing*, 156 B.R. 246, 249 (Bankr. E.D. Mo. 1993) (*citing In re George Walsh Chevrolet*, 118 B.R. 99, 102 (Bankr. E.D. Mo. 1990)); *In re Apex Oil Co.*, 92 B.R. 847, 866 (Bankr. E.D. Mo. 1988).

21. The standard for approval under section 363 looks to the sound exercise of a debtor's business judgment. "Under the 'business judgment' rule, the management of a corporation's affairs is placed in the hands of its board of directors and officers, and the Court should interfere with their decisions only if it is made clear that those decisions are, *inter alia*,

6

clearly erroneous, made arbitrarily, are in breach of the officers' and directors' fiduciary duty to the corporation, are made on the basis of inadequate information or study, are made in bad faith, or are in violation of the Bankruptcy Code." *In re Farmland Indus. Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003).

22.     As further demonstrated by the Wells Declaration, Debtor has determined that, in its business judgment, the sale of the Acquired Assets to Buyer is in the best interests of Debtor's estates and its creditors and provides the best chance for the FCC Licenses to be transferred. Debtor has also determined in its business judgment that the Proposed Sale is necessary, because the Proposed Sale is the best offer that Debtor has received, and there is substantial risk of deterioration of the value of the Acquired Assets and the FCC Licenses if the Proposed Sale is not consummated quickly.

23.     Furthermore, the Proposed Sale is for fair and reasonable consideration, is in good faith, does not unfairly benefit any insiders or creditors of Debtor, and will maximize the value of Debtor's estates.

## Sale Free and Clear of All Liens

24.     Section 363(f) of the Bankruptcy Code authorizes a debtor to use, sell, or lease property of the estate outside of the ordinary course of business free and clear of any interest in such property. Under the Proposed Sale, the Acquired Assets are to be sold free and clear of all liens, claims, and encumbrances with any such liens, claims, and encumbrances to attach to the net sale proceeds with the same validity, priority, force, and effect that such liens, claims, and encumbrances had on such assets prior to the closing of the Proposed Sale.

25.     The following lenders (collectively, the "**Lenders**") to Debtor hold valid, properly perfected liens upon and security interest in the Real Estate: (a) The Kenneth Kranzberg Revocable

7

Trust (the "**Kranzberg Trust**") and 3526 Washington LLC, a Missouri limited liability company ("**3526 Washington**" and together with the Kranzberg Trust, the "**Existing Secured Lenders**"). The Existing Secured Lenders are the only secured lenders with liens upon Debtor's assets as of the Petition Date.

26. Under Section 363(f) of the Bankruptcy Code, a sale free and clear of liens is permissible if, among other things, (i) the secured lienholders consent, or (ii) applicable non-bankruptcy law permits such a sale.

27. In this case, the Existing Secured Lenders will receive sales proceeds upon Closing of the transactions contemplated herein in exchange for their consent to the Proposed Sale of the Acquired Assets free and clear of their liens and interests.

**Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Pursuant to Section 365 of the Bankruptcy Code**

28. The assumption and assignment of certain executory contracts and unexpired leases are an integral part of the Proposed Sale and should be approved by the Court. Section 365(a) of the Bankruptcy Code authorizes a debtor in possession to assume an executory contract or unexpired lease subject to the Court's approval. Section 365(b) of the Bankruptcy Code requires the debtor in possession to satisfy certain requirements at the time of assumption if a default exists under the contract to be assumed.

29. The standard for determining whether an executory contract or unexpired lease should be assumed is the debtor's "business judgment" that assumption is in its economic best interests. *In re Food Barn Stores, Inc.*, 107 F.3d 558, 567 n.16 (8th Cir. 1996).

30. Pursuant to Sections 363 and 365 of the Bankruptcy Code, the Debtor requests that the Court approve the assumption and assignment of the Lease. Buyer does not intend to assume any other executory contracts and unexpired leases, to the extent that any such contracts and leases

8

exist. Furthermore, Debtor will establish at the Sale Hearing that adequate business justifications exist which merit judicial approval of the proposed assumptions and assignments.

31. Debtor will promptly cure any and all defaults under the Lease, to the extent that there are any, at the time of the assumption and assignment.

32. Following entry of the Sale Order, Debtor shall serve all parties to executory contracts and unexpired leases with a copy of this Motion and the Sale Order.

## **Selling the Acquired Assets by Sale Conducted Without an Auction Is Appropriate**

33. Bankruptcy Rule 6004(f)(1) permits sales conducted without an auction. Fed. R. Bankr. P. 6004(f)(1) ("All sales not in the ordinary course of business may be by private sale or by public auction."). Further, courts have generally held that a debtor has broad discretion in determining the manner in which assets are sold. *In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) (noting that a trustee has "ample discretion to administer the estate, including authority to conduct public or private sales of estate property.")

34. There is a strong business justification for the private sale of the Acquired Assets without a post-petition auction process. As discussed in the Wells Declaration, Debtor has undertaken efforts to try and market the Acquired Assets for sale and these efforts afforded a fair and reasonable opportunity for the limited number of potential purchasers positioned to acquire the Acquired Assets to make higher or better offers. While such efforts have yielded other interest and offers for the Acquired Assets, Debtor deems the offer tendered by K-LOVE to be the best offer. Moreover, a sale contemplates that the purchasing party receives the approval of the FCC for assignment of the FCC Licenses. Debtor is confident that K-LOVE possesses the qualifications necessary to obtain FCC approval, given its numerous prior successful experiences with the FCC application process.

35. Accordingly, Debtor has determined, in the exercise of its business judgment, that entry into the APA, without any added time, risk, and depletion of scarce estate assets associated with a public auction or engaging a new buyer, is in the best interest of the Debtor and all stakeholders.

36. The APA and the Purchase Price represent the highest and best offer that could reasonably be obtained for the Acquired Assets taking into account Debtor's difficulty in securing debtor-in-possession financing on the terms and in the amounts provided by K-LOVE. Debtor will provide extensive notice of the APA and proposed sale on a post-petition basis and will consider any higher or better offers received, subject to the overbid, and other break-up protections applicable to an Alternative Transaction or Alternative Buyer as set forth in Paragraphs 2.2 and 2.3 of the APA which protections Debtor agrees are reasonable protections to be afforded to K-LOVE as both the stalking horse bidder and debtor-in-possession financing lender.

**Allocation and Payment of Sale Proceeds**

37. Debtor requests that the Court approve payment of all of the proceeds received from the sale of the Acquired Assets into an account to be escrowed pending a determination of the extent and priority of all liens on the Acquired Assets.

**Waiver of Rule 6004(h) Period**

38. To facilitate a prompt closing of the Proposed Sale, Debtor requests that the time period set forth in Bankruptcy Rule 6004(h) be waived and that the order approving the Proposed Sale hereunder be immediately final.

**Notice of Motion and Sale**

39. Notice of this Motion and the Proposed Sale has been provided to all parties-in-interest, including (i) Office of the United States Trustee for the Eastern District of Missouri,

(ii) the holders of the 20 largest unsecured creditors, (iii) Debtor's secured lenders and agents, and (iv) all parties that have requested notice in the Chapter 11 Case pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, Debtor submits that no other or further notice is required.

WHEREFORE, Debtor Double Helix Corporation, d/b/a KDHX Community Media respectfully requests entry of the Sale Order, following the Sale Hearing: (a) authorizing Debtor to sell the Acquired Assets and assign the FCC Licenses and Lease to Buyer pursuant to the APA, free and clear of all liens, claims, and encumbrances subject to the approval by the FCC of assignment of the FCC Licenses to K-LOVE; (b) finding Buyer to be a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code; (c) authorizing and approving the assumption and assignment of the Lease and all executory contracts and unexpired leases, to the extent that such agreements and leases exist; (d) authorizing Debtor to take each of those steps outlined in the APA to close the Proposed Sale; and (e) granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

CARMODY MACDONALD P.C.

By: /s/ *Robert E. Eggmann*
Robert E. Eggmann #37374MO)
Nathan R. Wallace (#74890MO)
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
(314) 854-8600
(314) 854-8660 – FAX
ree@carmodymacdonald.com
nrw@carmodymacdonald.com

ATTORNEYS FOR DEBTOR

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 25th day of March, 2025, a copy of the above and foregoing was electronically filed with the United States Bankruptcy Court, Eastern District of Missouri, pursuant to the Case Management/Electronic Case Filing system of the Court, and electronic notice of such filing was served by the Office of the Clerk upon parties in interest registered in such Case Management/Electronic Case Filing system with respect to this case.

*/s/ Robert E. Eggmann*

S -UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | In Proceedings Under Chapter 11 |
| | ) | |
| **DOUBLE HELIX CORPORATION,** | ) | Case No. 25-40745-659 |
| d/b/a KDHX COMMUNITY MEDIA, | ) | |
| | ) | Ref. Mtn. ___ |
| Debtor. | ) | |

**DECLARATION OF KELLY K. WELLS IN SUPPORT OF
MOTION FOR AN ORDER: (A) AUTHORIZING THE SALE OF ALL OR
SUBSTANTIALLY ALL OF THE NON-REAL ESTATE ASSETS OF DEBTOR FREE
AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS TO K-
LOVE, INC., PURSUANT TO 11 U.S.C. § 363(f); (B) AUTHORIZING THE
ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES IN CONNECTION THEREWITH; AND (C) GRANTING
OTHER RELIEF RELATED TO THE PROPOSED SALE**

I, Kelly K. Wells, make this declaration (the "**Declaration**") under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am the executive director of Double Helix Corporation (the "**Debtor**" or "**Double Helix**"). As such, I am familiar with Debtor's day-to-day operations, business affairs, and books and records.

2. Except as otherwise indicated, this Declaration is based upon my personal knowledge and my review of relevant documents. If called upon to testify, I would testify competently to the facts set forth herein.

3. I am authorized to submit this Declaration on behalf of Debtor in support of the Debtor's *Motion for an Order: (A) Authorizing the Sale of All or Substantially All of the Non-Real Estate Assets of Debtor Free and Clear of All Liens, Claims, Encumbrances, and Interests to K-LOVE, Inc., Pursuant to 11 U.S.C. § 363(f); (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection Therewith; and (C) Granting Other*

*Relief Related to the Proposed Sale* (the "**Motion**") filed in the United States Bankruptcy Court for the Eastern District of Missouri (the "**Bankruptcy Court**") in the chapter 11 bankruptcy case pending under Case No. 25-40745 (the "**Chapter 11 Case**").

4. I have worked extensively and closely with Debtor and am knowledgeable and familiar with its operations, business, and financial affairs.

5. Double Helix is a nonprofit Missouri corporation currently doing business as KDHX Community Media. Double Helix has, since 1987, operated KDHX FM radio station ("**KDHX**") as an independent, non-commercial, educational, listener-supported community radio broadcast station in St. Louis, Missouri.

6. KDHX's business operations involve the use of substantial broadcasting and transmitting equipment (the "**Equipment**"), a transmitting tower (the "**Tower**"), other assets located at KDHX's Tower (the "**Tower Site**") and at the studio building located at 3524 Washington Ave., St. Louis, MO 63103 (the "**Real Estate**" and collectively with the Equipment, the Tower, and all other assets found at either location, the "**Assets**"). The Tower Site is subject to an unexpired ground lease (the "**Lease**").

7. Since the station's inception, Debtor has operated KDHX pursuant to the terms of licensing agreements (the "**FCC Licenses**") with the Federal Communications Commission ("**FCC**") and is subject to the FCC's regulatory actions.

8. In order to maintain its current operating FCC Licenses for KDHX with the FCC, Double Helix must provide continuous on-air non-commercial educational radio programming. Due to recent personnel cuts, KDHX has been forced to utilize previously recorded radio programming.

9. Since the onset of its financial difficulties, Debtor has remained open to a sale of all or substantially all of its non-real estate assets as a going concern, and prior to the Petition Date, Debtor began actively marketing the Assets for a potential private sale.

10. Debtor received a pre-petition acquisition offer from K-LOVE, Inc., a Tennessee nonprofit corporation ("**K-LOVE**"). I understand that K-LOVE is one of the world's largest Christian music radio networks with more than 1,000 broadcast signals across the United States. I believe that K-LOVE is substantially well-funded and qualified to obtain the FCC approval required to complete a potential purchase of KDHX.

11. Debtor's Board of Directors and the Associate members voted to approve the Proposed Sale in accordance with a vote which took place on March 3, 2025.

12. Debtor has entered into a letter of intent (the "**LOI**") with K-LOVE for the purchase of all or substantially all of Debtor's non-real estate assets (the "**Acquired Assets**"), as well as the assignment of its FCC License (pending FCC approval) and assumption of the Lease (the "**Proposed Sale**"). Debtor and K-LOVE then negotiated and executed a certain Asset Purchase Agreement dated March 25, 2025 (the "**APA**"), incorporating the LOI and setting forth the terms of the Proposed Sale.

13. The Proposed Sale shall be for a purchase price in the amount of $4,350,000.00 in cash (the "**Purchase Price**"), which Purchase Price includes the assumption of certain assumed liabilities (the "**Assumed Liabilities**," as more fully and completely described in the APA and which shall include the Lease). The Purchase Price shall be subject to adjustment for the increase in value of the Acquired Assets between the date of the APA and the date of the closing of the sale contemplated by this Motion.

14. The Purchase Price for the Proposed Sale received by Debtor offers terms consistent with what Debtor might expect to receive as fair and equitable consideration for such assets.

15. The Proposed Sale is subject to approval by the FCC of the assignment of the FCC License to K-LOVE.

16. Given the foregoing, and further supported by the Debtor's current liquidity position, it is my belief that the current offer by K-LOVE represents the best and highest offer for the purchase of all or substantially all of the Debtor's non-real estate assets, and there is substantial risk of deterioration of the value of the Acquired Assets and the FCC License if the Proposed Sale is not consummated quickly.

17. I believe that the sale of all or substantially all of its non-real estate assets as a going concern to K-LOVE is in the best interest of KDHX, its creditors, and other parties-in-interest.

18. I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated:  March, 25, 2025

*Kelly K. Wells*

Kelly K. Wells, Executive Director

4