UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| DOUBLE HELIX CORPORATION, | ) | Case No.: 25-40745 |
| d/b/a KDHX COMMUNITY MEDIA, | ) | |
| | ) | **NOTICE AND MOTION FOR RELIEF** |
| | ) | **FROM, OR CONFIRMATION OF LACK** |
| Debtor. | ) | **OF, STAY OF LITIGATION** |
| | ) | |
| STACY BERNARD, *et al.* | ) | |
| | ) | Hearing Date: April 16, 2025 |
| Movants | ) | Hearing Time: 10:00 am |
| | ) | Location: St. Louis; Courtroom 7N |
| v. | ) | Response Date: April 14, 2025 |
| | ) | |
| DOUBLE HELIX CORPORATION, | ) | |
| d/b/a KDHX COMMUNITY MEDIA, | ) | |
| | ) | |
| Respondent. | ) | |

NOTICE

     WARNING: THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE BY AS SET FORTH ABOVE.

     YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. THE DATE IS SET OUT ABOVE. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

     REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.

MOTION

     Come now Stacy Bernard, et al.[1], pursuant to Bankruptcy Code § 362(d)(1), and state as

---

1 Stacy Bernard, James Bruce, Antonio Cabanellas, Ryan Cain, Courtney Dowdall, Keith Dudding, William Gelb,

1

follows in support of their Motion for Relief From, or Confirmation of Lack of, Stay of Litigation (the "Motion"):

1. This Motion is being brought pursuant to 11 U.S.C. §§ 361 and 362 and Bankruptcy Rule 4001. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Local Rule 9.01 of the United States District Court for this District.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. § 1409. This is a contested matter under Bankruptcy Rule 9014.

3. Double Helix Corporation d/b/a KDHX Community Media ("Debtor" or "KDHX") is the Debtor in this voluntary Chapter 11 bankruptcy case.

## Introduction

4. Movants Bernard, *et al.*, but for Mr. Valley, are Plaintiffs in *Bernard, et al. v. Double Helix Corp., et al.*, Cause No. 2422-CC00192 (Circuit Court, City of St. Louis), filed Jan. 29, 2025 ("State Court case"). *See* Amended Petition (attached as Exhibit 1). The State Court case is pending before Judge Moriarty.

5. Debtor currently has one class of members (the "Associate Members"). It previously had a second class of members (the "Annual Members").

6. Pursuant to the Missouri Nonprofit Corporation Act and Debtor's By-laws, the Associate Members have various rights including voting rights. *E.g.*, RSMo §§ 355.186, 355.356. For example, the Associate Members have the right to vote on the sale or lease of Debtor's assets other than in the usual and regular course of its activities. RSMo § 355.656; Debtor's 2021 By-laws, Article IX (attached as Exhibit 2).

---

Frederick Gumaer, Lee Howland, Charles Jove, Rob Levy, Christopher Schwarz, Darren Snow, and Steve St. Cyr are Plaintiffs in *Bernard, et al. v. Double Helix Corp., et al.*, Case No. 2522-CC00192 (Circuit Court, City of St. Louis). Jon Valley is a creditor of the Debtor.

2

7. Debtor has improperly disenfranchised its Associate Members on numerous occasions in recent weeks and months. Debtor improperly attempted to terminate nearly all its Associate Members on January 31, 2025. This unlawful mass termination and stripping of the Associate Members' rights are the primary issues in the State Court case and are of great importance to this case.

8. Movants were Associate Members of the Debtor when Debtor filed its bankruptcy petition. The parties dispute the Associate Members' current status—a dispute made clear in Debtor's March 26 motion seeking authorization to sell assets. This dispute is at issue in the State Court case, resolution of which is critical to the resolution of this bankruptcy.

9. Despite State Court Orders confirming the Movants' membership status, Debtor did not allow the Movants to vote on the sale of assets as required by Missouri statute and the By-laws. February TRO (Exhibit 3); March TRO (Exhibit 4).

10. The State Court case states nine claims: seven against individual Directors on Debtor's Board, one against the Debtor, and one against the individuals and Debtor. No claim seeks monetary damages. No claim seeks possession of assets or physical property. These are internal disputes about nonprofit governance—issues of great importance at this crucial juncture.

11. Counts I through VII name individual Directors as Defendants (the "Individual Defendants") seeking their removal pursuant to RSMo § 355.356. To summarize the alleged violations of statutes, misconduct, and mismanagement, these Individual Defendants:

- wrongfully removed an entire class of membership ("Annual Members"),
- terminated many members from the other membership class ("Associate Members") in violation of RSMo § 355.211, without cause, without required process, and in direct contradiction of written promises,
- on January 31, 2025, purportedly terminated nearly all remaining Associate Members in violation of RSMo § 355.211, without cause, and without required process,

3

- improperly amended Debtor's By-laws by not following statute or the procedures set forth in the By-laws,
- prevented free and fair elections of Board members,
- improperly fired volunteers,
- improperly retaliated against volunteers and members for disagreeing with Board actions or speaking out in favor of saving KDHX,
- suspended a member as retaliation for asking KDHX to simply follow Missouri law,
- took away voting power and other rights from the members that remain, and
- selectively enforced KDHX policies and Bylaws only when it served the Board's interests as opposed to the organization's interests.

*See* Ex. 1, ¶ 51.

12. Count VIII is against Debtor for amending its By-laws in violation of RSMo § 355.611 and the By-laws.

13. Count IX is against Debtor and the Individual Defendants for terminating nearly all of the Associate Members in violation of RSMo § 355.211.

14. Among other reasons, Movants seek to continue prosecution of the State Court case to determine Movants' membership and voting rights, to determine proper composition of the Board, and to determine the validity of the Debtor's action to seek a sale of its primary asset (the FCC broadcast license) and, indeed, the validity of Debtor's actions to commence this bankruptcy case.

15. Debtor is operating in violation of Missouri law, Movants' statutory rights, and its By-laws. That is why the State Court case was filed and why it must continue. Prosecution of the State Court case is in the best interests of the Debtor whose obligations to follow Missouri law and its By-laws do not stop with the filing of a bankruptcy petition.

16. Debtor's Articles of Organization provide that the purpose of the corporation is the establishment and operation... "of one or more non-commercial educational radio

4

broadcasting stations licensed by the Federal Communication Commission." Exhibit 5.

17. Movants are distraught that a unique community resource is on a fast track to be sold—contrary to Debtor's purpose as set forth in its Articles—to a national Christian broadcasting network when there are many opportunities to listen to Christian radio stations in the St. Louis area but there is only one KDHX. They are interested in this case and its outcome, because they want to preserve this unique institution and source of music in the St. Louis area.

### Timeline, TRO, TRO Violations, and an Unseated Director

18. On January 29, 2025, on behalf of the Associate Members, Movants filed the State Court case.

19. On January 31, 2025, Debtor attempted to terminate approximately 115 of 124 Associate Members. Exhibit 6 ("Mass Termination Email"). As a result, Movants amended their petition (adding Count IX) seeking a declaratory judgment that the Mass Termination violated Missouri law and was not done in "good faith" as required by RSMo § 355.211.

20. Evidencing Debtor's bad faith, the Mass Termination was not preceded by any notice and was intended to be effectively "immediately." Further, the Mass Termination did not involve any process or procedure as required by law.

21. Incredibly, and suggesting ulterior motives, the only nine people spared by the Mass Termination were the eight Directors and one hand-picked individual. The intended effect of this Mass Termination was that the Board would then control both arms of government—the Board of Directors and the Associate Membership class.

22. Without an actual Associate Membership class, the Board could push through any vote needed, including a vote to sell assets, bypassing Missouri law, the By-laws, and good faith nonprofit governance.

23. On February 18, 2025, Judge Moriarty issued a Temporary Restraining Order in

the State Court case "restraining Defendants from terminating the membership of Plaintiffs and/or preventing Plaintiffs from participation in the annual meeting and election of board members." Ex. 3, 4.

24. Judge Moriarty found "Plaintiffs under Rule 92.02(a)(5) timely requested an extension of the temporary restraining order on March 4, 2025." Ex. 4, p. 2. She then "ordered and decreed that the temporary restraining order against Defendants shall be extended pursuant to Rule 92.02 for an additional fifteen (15) days from [March 4, 2025]." *Id.*

25. While the TRO was pending, Debtor repeatedly violated the unambiguous TRO. Debtor treated the Plaintiffs as having been terminated, refused to recognize their membership rights and status, refused to provide statutorily required documents, and refused to permit them to talk at their own membership meeting (much less conduct business as required by the By-laws). Debtor's conduct was the subject of a hearing in the State Court case on March 6.

26. Unable to stop the TRO and facing a possible loss on the merits, Debtor filed its petition in this Court on March 10, 2025.

27. Recently, more conduct inconsistent with the TRO has come to light.

   a. Debtor held "votes" on the sale of assets to K-LOVE on March 3, *while the TRO was in place*. Doc. 49, ¶ 11 ("the Associate members voted to approve the Proposed Sale with a vote which took place on March 3, 2025."). Movants did not receive notice of that meeting and were not allowed to vote.
   b. Debtor refused to seat the winner of the February 25 election to the Board of Directors. On March 26, Board President Gary Pierson informed Movant Courtney Dowdall that she won re-election to the Board of Directors. The election ended on February 25, but Debtor failed to inform Director Dowdall of her victory until March 26. Exhibit 7 (C. Dowdall Declaration).
   c. During the month that Debtor refused to seat Director Dowdall or even inform her of the election results, the Board took key votes including the March 3

6

vote to sell assets. Presumably, the Board also voted to file the bankruptcy petition. Director Dowdall was not notified of that meeting or vote. Ex. 7.

### Relief Requested

I. **Movants Seek Confirmation that the Automatic Stay is Inapplicable to Claims Against the Individual Defendants**

28. The automatic stay "protects only the debtor, property of the debtor or property of the estate…. It does not protect non-debtor parties or their property." *In re Triad Constr. Co., Inc.*, 545 B.R. 597, 603-04 (Bankr. W.D. Mo. 2016) (citing *In re Advanced Ribbons & Office Prods.*, 125 B.R. 259, 263 (9th Cir. BAP 1991)). "The automatic stay typically does not apply to a non-debtor (or non-creditor) third party unless special circumstances exist." *Id.* at 604 (citing *In re Prairie Trunk Railway,* 112 B.R. 924, 930 (Bankr. N.D.Ill.1990)).

29. "The automatic stay is a bar to all collections efforts against a debtor or debtor's property in an effort to determine creditor's rights and allow the orderly administration of a debtor's assets, free from creditor's interference." *In re Continentalafa Dispensing Co.*, 403 B.R. 653, 659 (Bankr. E.D. Mo. 2009). The "unusual circumstances" exception may be applied when the "identity of the debtor is so entangled with a third-party defendant that judgment against the third-party defendant will in effect be a judgment against the debtor." *Id.* (citing *In re Veeco, Inv. Co., L.P.*, 157 B.R. 452, 454 (Bankr. E.D. Mo 1993); *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 999 (4th Cir. 1986)). For example, the exception applied when a debtor is wholly owned by third-party defendants. *See in re Continentalafa*, 403 B.R. at 659.

30. The "special circumstances" exception does not apply to the State Court claims against the Individual Defendants. Counts I through VII can only be brought against individual directors. These claims were not and cannot be brought against the Debtor. *See* RSMo § 355.356 ("Removal of director by court"). A judgment against an Individual Defendant pursuant to RSMo § 355.356 only extends to the individual. Count IX names the individuals as

7

defendants but, again, a judgment against one director only extends to that director.

31. This narrow exception exists to further the purpose of the stay and protect the debtor from collection efforts such as in a "suit against a third-party who is entitled to absolute immunity by the debtor…." *In re Roman Cath. Diocese of Rockville Ctr., New York*, 651 B.R. 622, 648 (Bankr. S.D.N.Y. 2023) (quoting *A.H. Robins,* 788 F.2d at 1001–02).

32. Money and property are not at issue in the State Court case. It is an internal governance dispute brought by Associates Members of KDHX against KDHX and individual Directors on KDHX's Board. It alleges that Directors took actions against the best interests of the nonprofit. It alleges that Debtor violated statutes and By-laws. It does not involve immunity or any risk to Debtor's property. A judgment against any individual Defendant on any claim in the State Court case would simply be invoking a statute or declaring a violation of a statute or By-laws.

33. If an individual Director is found to have committed dishonest or fraudulent acts subjecting himself or herself to removal pursuant to RSMo § 355.356, the Debtor should welcome that removal. In fact, the statute states that such removal must be "in the best interest of the corporation." *Id*. The State Court case could not "effectively lead to 'a judgment or finding against the debtor' warranting application of section 362(a)(1)." *See In re Roman Cath. Diocese of Rockville Ctr., New York*, 651 B.R. at 649.

34. Therefore, the claims against the Individual Defendants must proceed.

**II.   Movants Seek Relief from the Automatic Stay Regarding the Two Claims Against the Debtor**

    **A.   The Automatic Stay Does Not Apply to Members of a Corporation Who Are Simply Exercising Their Rights**

35. The automatic stay provisions are not implicated by, or applicable to, a shareholder's exercise of their corporate governance rights. *See In re SS Body Armor*, 527 B.R.

8

597, 604-605 (citing *In re Marvel Entm't Grp., Inc.*, 209 B.R. 832, 838 (D. Del. 1997). "If the primary purpose of Chapter 11 is the rehabilitation of debtor corporations, there is no reason to disenfranchise equity holders *so long as their exercise of voting rights does not impair such rehabilitation.*" *Id.* (quoting *Fogel v. U.S. Energy Sys., Inc.* 2008 WL 151857, at *2 (Del.Ch. Jan 15, 2008). "Members" in a nonprofit corporation are analogous to "shareholders" in a for-profit corporation. *See Fed. Election Comm'n v. Nat'l Right to Work Comm.*, 459 U.S. 197, 205 (1982).

36. Here, the Associate Members of KDHX have governance rights, including voting rights conferred by statute and the By-laws. Exercising those rights, the Associate Members filed the State Court case. KDHX responded to the lawsuit by terminating nearly every member and trampling on their rights. KDHX has repeatedly disenfranchised the Associate Members, stripped them of their governance rights, shut them out, and silenced them. KDHX's conduct has continued in the face of crystal-clear Court Orders.

37. The Associate Members will be further disenfranchised if the State Court case is stayed. The State Court case does not impair Debtor's rehabilitation. It is Debtor's unwillingness to follow the law and recognize its members' rights which impairs its rehabilitation. Compliance with the law is in the best interests of all involved, including the creditors. Therefore, the automatic stay provisions are not implicated by the members' exercise of their corporate governance rights. *See In re SS Body Armor*, 527 B.R. at 605.

**B.  Even if the Stay is Applicable, the Balance of Hardships Weigh Strongly in Favor of Lifting the Stay**

38. If the Court finds that the stay is applicable to the two claims against Debtor in the State Court case, Bankruptcy Code § 362(d)(1) provides that the Court may grant relief from the automatic stay for cause. 11 U.S.C. § 362(d)(1).

39. "Although Congress did not define cause, it intended that the automatic stay

would be lifted to allow litigation involving the debtor to continue in a non-bankruptcy forum under certain circumstances." *In re Wiley*, 288 B.R. 818, 822 (8th Cir. BAP 2003) (citing *In re Blam*, 237 B.R. 737, 739 (8th Cir. BAP 1999)). "It would often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from duties that may be handled elsewhere." *Id.* (internal citations omitted).

40.     "In making the determination of whether to grant relief from the stay, the court must balance the potential prejudice to the debtor, to the bankruptcy estate, and to the other creditors against the hardship to the moving party if it is not allowed to proceed in state court. *In re Wiley*, 288 B.R. at 822 (citing *In re Blam*, 237 B.R. at 739). "The factors used to balance the hardships are: (1) judicial economy; (2) trial readiness; (3) the resolution of preliminary bankruptcy issues; (4) the creditor's chance of success on the merits; (5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors." *Id.* "Not all factors must be present, and equal weight need not be given to each factor." *In re Yarbrough*, 540 B.R. 647, 662 (Bankr. E.D. Ark. 2015) (internal citation omitted).

41.     Judicial economy weighs in favor of lifting the stay. As explained above, Counts I—VII only apply to the non-debtor individuals. Count VIII alleges the Debtor improperly amended its By-laws and terminated a membership class without a vote. Regarding Count IX, the state court's TRO applied to "Defendants" including Debtor. Ex. 3, 4. Count IX should continue against the Individual Defendants, and judicial economy calls for it to continue against the Debtor as well. The state court is well-versed in the matter having held multiple hearings, reviewed extensive briefing, issued a TRO, and extended the TRO. The state court has jurisdiction over all claims and parties and can fully resolve the issues. *See In re Yarbrough*, 540 B.R. at 662-663. While only one claim names both the Debtor and the Individual Defendants as

co-Defendants, each claim involves the same background facts. Judicial economy weighs in favor of lifting the stay.

42. Although a trial date has not been set and answers have not been filed, the State Court case should move quickly. It will be a bench trial, and Judge Moriarty has already held multiple hearings and issued a TRO. The two claims against the Debtor involve straight-forward statutes and By-laws. In *In re Living Hope Southeast, LLC*, 505 B.R. 237, 246 (Bankr. E.D. Ark. 2014), this factor weighed slightly in favor of lifting the stay even though the Debtor had not answered but the court had granted injunctive relief. Further, similar to this case, the other factors "simply outweigh the trial readiness factor." *Id.*

43. There are no preliminary bankruptcy issues to resolve for the State Court case to proceed. Rather, the State Court case can resolve issues relevant to the bankruptcy including the membership status of Movants, the Movants' ability to participate in governance, disputes about the Debtor's By-laws, the recent Board election, and the composition of the Board of Directors. Therefore, this factor weighs in favor of lifting the stay.

44. Movants' chances of success on the merits against Debtor are high, which weighs heavily in favor of lifting the stay. In the State Court case, Judge Moriarty granted and extended a TRO on Count IX (Declaratory Judgment that the Mass Termination violated Missouri law). To terminate a member from a nonprofit, Missouri requires a fair and reasonable procedure "carried out in good faith." RSMo § 355.211. Debtor attempted to terminate nearly all Members without providing any notice or procedure. Ex. 6. Evidencing Debtor's bad faith, this occurred two days after the State Court case was filed and just before the Associate Members were to hold their annual meeting and elect a Director. The TRO was issued by Judge Moriarty after she considered the issues of irreparable harm, probability of success, the balance of hardships, and the public interest. Ex. 3, 4.

11

45. Count VIII is the only other claim against Debtor. Again, Movants' chance of success is quite high with this straightforward claim. On at least two occasions, Debtor improperly amended its By-laws. Debtor eliminated the Annual Class of members without a vote. Exhibit 8 (Minutes from 2018 Board meeting). To eliminate a membership class, Missouri law requires a vote and approval of two-thirds of votes cast by each membership class. RSMo § 355.611. In 2021, Debtor improperly amended the By-laws without a proper vote or procedure. Ex. 1, Count VIII.

46. Certain courts have held that likelihood of success on the merits can be dispositive. *See In re VidAngel, Inc.*, 593 B.R. 340, 352 (Bankr. D. Utah 2018) ("As held by the Tenth Circuit, this factor is dispositive in determining whether to grant relief from stay.").

47. The final factor, cost, also weighs in favor of lifting the stay. Movants understand that Debtor's insurance is covering the cost of defense in the State Court case. Coverage counsel represents both Debtor and the Individual Defendants that have entered, so the Debtor will not incur any financial burden if the case continues. Regardless, "[t]he mere cost of defense, however, is ordinarily considered an insufficient basis for denying relief from the stay." *In re Wiley*, 288 B.R. at 823 (internal citations omitted). Relief from the stay will not prejudice the creditors or dilute their ultimate financial return.

48. Lifting the stay places no significant burden on the Debtor or its property. The State Court case is an internal governance dispute between the Debtor, its Members, and its Directors. No monetary damages are sought. No property is in dispute. Importantly for a nonprofit, particularly one in a financial and operational crisis, the dispute is about who has the right to participate in corporate governance, who has membership rights, who can vote, how to run an election, who is a Director, whether the By-laws were followed, and how and why the Missouri Nonprofit Corporation Act was repeatedly violated. Lifting the stay will assist, not

12

impede, the bankruptcy process.

49.  *It is crucial for this Court and all those affected by this bankruptcy case to understand the process by which the Debtor reached this point, whether the process was valid, and whether there is a better way to reorganize this Debtor.*

50.  For example, Debtor claims to have conducted valid votes by the Directors and the Associate Members concerning the sale of Debtor's assets. Movants adamantly deny this. The Movants are Associate Members. However, the Movants were not given notice of any such meeting or vote, and did not participate in any vote. Further, the Board was not properly constituted when the bankruptcy petition was filed or when the March 3 Board vote was taken. Therefore, none of these actions were valid.

51.  This bankruptcy case may turn on whether Debtor and the Directors were following the procedures set forth in the applicable statutes and By-laws and were acting in good faith. A TRO was issued suggesting that they were not. Lifting the stay will shed light on the governance and management of this nonprofit, which will benefit all involved and help lead to a result that is in the best interests of the organization.

52.  Debtor acknowledges that a membership vote is needed for Debtor to sell assets outside the ordinary course of business. Debtor should also want clarification of whether its vote was proper. Similarly, no party involved in this bankruptcy, including the proposed Buyer, K-LOVE, should want to proceed without clarity as to the propriety of Debtor's actions.

53.  The balance of hardships favors the Movants. The Movants' hardships are clear and continuing. Debtor continues to disenfranchise its Associate Members who have statutory rights to vote in this process and otherwise participate in Debtor's governance. Debtor faces no financial hardship by continuing to litigate in state court. Debtor certainly faces no hardship if ordered to follow Missouri law or if found to have violated Missouri law.

54. Overall, the relevant factors weigh in favor of lifting the stay. Movants are likely to prevail on the merits. This is the most important factor in this particular case. The Debtor has allegedly violated laws, its own By-laws, and Court Orders in its attempt to obtain necessary votes to sell assets. Judicial economy, the lack of preliminary bankruptcy issues, the cost of defense, the lack of monetary damages, and the positive impact the litigation will have on this process and in ensuring proper governance at KDHX all weigh in favor of lifting the stay.

## **PRAYER FOR RELIEF**

Granting the relief sought will not prejudice the Debtor or any other party in interest. Prosecution of the State Court case does not require a substantial imposition on the time of Debtor or its employees, nor does it impose any financial burden on the Debtor.

WHEREFORE, Movants pray this Court enter an order:

a. Terminating the automatic stay of 11 U.S.C. § 362 and permitting Movants to continue to prosecute the State Court case against the Debtor;

b. Confirming the absence of or terminating the automatic stay of 11 U.S.C. § 362 and permitting Movants to continue to prosecute the State Court case against the individual, non-debtor defendants;

b. Allowing immediate implementation of the order pursuant to Bankruptcy Rule 4001(a)(3); and

c. Granting such other and further relief as may be necessary or appropriate.

| | |
|---|---|
| ASKEW LAW LLC | DANNA MCKITRICK, P.C. |
| BY: /s/Benjamin R. Askew | BY:/s/A. Thomas DeWoskin |
| Benjamin R. Askew, #58933MO | A. Thomas DeWoskin, #25320MO |
| 4117 Olive Street | 7701 Forsyth Blvd., Suite 1200 |
| St. Louis, MO 63108 | St. Louis, MO, 63105 |
| (314) 566-4459 | (314) 726-1000/(314) 725-6592 fax |
| E-mail: askewlawllc@gmail.com | E-mail: tdewoskin@dmfirm.com |

<b>ATTORNEYS FOR MOVANTS</b>

<b><u>CERTIFICATE OF SERVICE</u></b>

     I hereby certify that on this 3nd day of April 2025, a copy of this document was served electronically upon filing on all parties listed on the Court's Electronic Mail Notice List via the Court's CM/ECF System and was served by first class mail or other means indicated on the parties at the addresses listed on the attached mailing list.

                                                             /s/ *A. Thomas DeWoskin*
                                                               A. Thomas DeWoskin

4932-9462-1487, v. 4

| | | |
|---|---|---|
| Label Matrix for local noticing<br>0865-4<br>Case 25-40745<br>Eastern District of Missouri<br>St. Louis<br>Thu Apr  3 13:53:54 CDT 2025 | 3526 Washington SLE<br>50 Picardy Lane<br>Saint Louis, MO 63124-1629 | A&W Lawn & Landscaping<br>5430 Amber Meadows Dr.<br>Imperial, MO 63052-3131 |
| AHC Consulting<br>567 Hanley Industrial Court<br>Saint Louis, MO 63144-1901 | AT&T<br>P.O. Box 5014<br>Carol Stream, IL 60197-5014 | Aetna Health, Inc<br>151 Farmington Ave<br>Hartford, CT 06156-0001 |
| Alliance Systems<br>999 Executive Parkway Drive, Ste. 320<br>Saint Louis, MO 63141-6336 | Alliant Insurance Services, Inc<br>18100 Von Karman Ave.<br>Irvine, CA 92612-0169 | Ameren<br>PO Box 88034<br>Chicago, IL 60680-1034 |
| Ameren<br>PO Box 88068<br>Chicago, IL 60680-1068 | Andrea E. Dunn<br>2617 Louisiana<br>Saint Louis, MO 63118-1126 | ~~Benjamin Reid Askew<br>Askew Law LLC<br>4117 Olive Street<br>St. Louis, MO 63108-3125~~ |
| Bourgeois Door Company<br>P.O. Box 270066<br>Saint Louis, MO 63127-0066 | Brown Dog Networks<br>1733 Chase Dr.<br>Fenton, MO 63026-2001 | Linda Chambless<br>1846 Harbor Mill<br>Fenton, MO 63026-2653 |
| Paul Chambless<br>1846 Harbor Mill<br>Fenton, MO 63026-2653 | Chase Cardmember Service<br>P.O. Box 15123<br>Wilmington, DE 19850-5123 | Allen Coalson<br>58 Ruth Ann Dr.<br>Godfrey, IL 62035-3404 |
| Dianne Crowe<br>4630 Britcastle Dr.<br>St. Louis, MO 63128-3403 | Da-Com<br>5317 Knights of Columbus Dr.<br>Saint Louis, MO 63119-5060 | ~~A. Thomas DeWoskin<br>Danna McKitrick, P.C.<br>7701 Forsyth Blvd., Suite 1200<br>St. Louis, MO 63105-1816~~ |
| Double Helix Corporation<br>3524 Washington Ave<br>Saint Louis, MO 63103-1019 | ~~Robert E Eggmann III<br>Carmody MacDonald P.C.<br>120 South Central Avenue, Suite 1800<br>Clayton, MO 63105-1726~~ | Engineered Fire Protection, Inc.<br>230 Sovereign Court<br>Ballwin, MO 63011-4415 |
| F. E. W. CPAs<br>6240 S. Lindbergh, Suite 101<br>Saint Louis, MO 63123-7829 | Financing Solutions<br>3773 Howard Hughes Parkway, Ste. 500S<br>Las Vegas, NV 89169-6014 | (p)FIRST INSURANCE FUNDING<br>450 SKOKIE BLVD SUITE 1000<br>NORTHBROOK IL 60062-7917 |
| Foster Garvey<br>1111 Third Avenue, Ste. 3000<br>Seattle, WA 98101-3296 | Gladiator Consulting<br>4265 Russell Blvd.<br>Saint Louis, MO 63110-3510 | Happy Roof Company<br>3106 Ivanhoe Ave.<br>Saint Louis, MO 63139-2531 |

Hoffman Brothers STL
1025 Hanley Industrial Court
Saint Louis, MO 63144-1907

Jacob Hurst
3727 Park Crest
St. Louis, MO 63125-2460

Internal Revenue Service
Centralized Insolvency Operation
P.O. Box 7346
Philadelphia, PA 19101-7346

Internal Revenue Service
P.O. Box 7346
Philadelphia PA 19101-7346

Jackson Lewis PC
1 N. Brentwood Blvd., Ste. 1150
Saint Louis, MO 63105-3907

Jesse M. Hebisen
914 N. Elm
Saint Louis, MO 63119-1723

John McNeely
963 Quail Terrace Ct., Apt. D
Ballwin, MO 63021-8316

Jon K. Valley
416 Valley View Drive
East Alton, IL 62024-1950

Joshua Michael Jones
U.S. Attorney's Office
111 S. 10th Street
Suite 20.333
St. Louis, MO 63102-1127

K-Love, Inc.
C/o Andrew R. Magdy
Summers Compton Wells LLC
903 S. Lindbergh Blvd.
#200
St. Louis, MO 63131-2934

K-Love, Inc.
c/o Andrew Magdy
Summers Compton Wells PC
903 S. Lindbergh Blvd., #200
Saint Louis, MO 63131-2934

Kelly K. Wells
3161 Michigan Ave.
Saint Louis, MO 63118-2119

Ken Kranzberg Revocable Trust
50 Picardy Lane
Saint Louis, MO 63124-1629

Andrew R Magdy
Summers Compton Wells LLC
903 S. Lindbergh Blvd.
#200
St. Louis, MO 63131-2934

Mark Hamlin
1 Denbrook Terrace
St. Charles, MO 63301-4871

Missouri Department of Revenue
Bankruptcy Unit
PO Box 475
301 W High St
Jefferson City, MO 65101-1517

Missouri Department of Revenue
Attn: Bankruptcy Unit
P.O. Box 475
Jefferson City, MO 65105-0475

Nathaniel M. Knoll
4 Ola Ave.
Saint Louis, MO 63119-4742

Natural Broadcast Systems, Inc.
P.O. Box 761205
San Antonio, TX 78245-6205

Office of US Trustee
111 S Tenth St, Ste 6.353
St. Louis, MO 63102-1127

Peoplekeep, Inc
3267 E 3300 S Suite 526
Salt Lake City, UT 84109-2246

Principal Financial Group, Inc
711 High Street
Des Moines, IA 50392-0001

Ralph Brancato
2916 Concordia Lane
Saint Charles, MO 63301-4614

Ronnie D. Wisdom Jr.
6437 Mardel
Saint Louis, MO 63109-1357

S&H Parking Systems
1325 N. 10th St.
Saint Louis, MO 63106-4550

Sandberg, Phoenix & Von Gontard P.C.
701 Market Street, Suite 600
Saint Louis, MO 63101-1826

Superior Elevator Inspectors
319 Summit Road
Fenton, MO 63026-3906

Swift Print Communications
1248 Research Blvd.
Saint Louis, MO 63132-1714

The Hartford Insurance
One Hartford Plaza
Hartford, CT 06155-0001

James Treece
Missouri Department of Revenue
301 W High St
PO Box 475
Room 670
Jefferson City, MO 65105-0475

| | | |
|---|---|---|
| Tueth Keeney Cooper Mohan Jackstadt P.C.<br>34 N. Meramec Ave., Ste. 600<br>Saint Louis, MO 63105-3953 | United States of America<br>on behalf of Internal Revenue Service | Nathan R Wallace<br>Carmody MacDonald PC<br>120 S Central Ave<br>Ste 1800<br>St Louis, MO 63105-1726 |

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

First Insurance Funding
450 Skokie Blvd., Ste. 1000
Northbrook, IL 60062-7917

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| | | |
|---|---|---|
| (d)AT&T<br>PO BOX 5014<br>Carol Stream, IL 60197-5014 | (u)Stacy Bernard | (u)James Bruce |
| (u)Antonio Cabanellas | (u)Ryan Cain | (u)Courtney Dowdall |
| (u)Keith Dudding | (u)William Gelb | (u)Frederick Gumaer |
| (u)Lee Howland | (u)Charles Jove | (u)LOVE of KDHX, Inc. |
| (u)Rob Levy | (u)Christopher Schwarz | (u)Darren Snow |
| (u)Steve St. Cyr | (u)Jon Valley | End of Label Matrix<br>Mailable recipients    62<br>Bypassed recipients    17<br>Total                  79 |