Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

**IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| **STACY BERNARD,** | ) | |
| **CHRISTOPHER SCHWARZ, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Cause No.:  2522-CC00192** |
| | ) | |
| **v.** | ) | **Division:  20** |
| | ) | |
| **DOUBLE HELIX CORPORATION** | ) | |
| **d/b/a KDHX COMMUNITY MEDIA,** | ) | |
| **JOAN BRAY,** | ) | |
| **PAUL DEVER,** | ) | |
| **JEFFREY FERNHOFF,** | ) | |
| **RAY FINNEY,** | ) | |
| **FRANC FLOTRON,** | ) | |
| **CARYN HADDIX,** | ) | |
| **GARY PIERSON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**FIRST AMENDED PETITION**</u>

For their First Amended Petition against Defendants Double Helix Corporation d/b/a

KDHX Community Media ("KDHX"), Joan Bray, Paul Dever, Jeffrey Fernhoff, Ray Finney,

Franc Flotron, Caryn Haddix, and Gary Pierson (collectively, "Defendants"), Plaintiffs Stacy

Bernard ("Bernard"), Doe 1, Doe 2, Doe 3, Doe 4, Doe 5, Doe 6, Doe 7, Doe 8, Doe 9, Doe 10,

Doe 11, Doe 12, Doe 13, Doe 14, and Christopher Schwarz ("Schwarz"), state and allege as

follows.

This Petition is the result of unlawful acts taken by KDHX and its Board of Directors.

This Petition presents two types of claims: 1) removal of Directors from the KDHX Board of

Directors pursuant to RSMo § 355.356; and 2) declaratory judgment that the KDHX Bylaws

were improperly amended contrary to Missouri law.  As explained below, the Defendant

Directors engaged in dishonest or fraudulent conduct and gross abuses of authority and

discretion contrary to the best interests of KDHX, a nonprofit community media organization.

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

## PARTIES, JURISDICTION, AND VENUE

1.      Defendant KDHX is a Missouri nonprofit corporation with a principal office located in the City of St. Louis at 3524 Washington Avenue, St. Louis, Missouri 63103.

2.      KDHX is governed by a Board of Directors.

3.      Defendant Joan Bray is a director on the KDHX Board of Directors.

4.      Defendant Paul Dever is a director on the KDHX Board of Directors.

5.      Defendant Jeffrey Fernhoff is a director on the KDHX Board of Directors.

6.      According to KDHX's minutes and website, Defendant Ray Finney is a director on the KDHX Board of Directors.

7.      According to KDHX's minutes and website, Defendant Franc Flotron is a director on the KDHX Board of Directors.

8.      Defendant Caryn Haddix is a director on the KDHX Board of Directors.

9.      Defendant Gary Pierson is a director on the KDHX Board of Directors.[1]

10.      Plaintiff Bernard is a citizen of Missouri and a Missouri resident.  Plaintiff Bernard resides in St. Louis County.

11.      Plaintiff Bernard is an Associate Member of KDHX.

12.      Plaintiff Schwarz is a citizen of Missouri and a Missouri resident.  Plaintiff Schwarz resides in St. Louis City.

13.      Plaintiff Schwarz was an Annual Member of KDHX.  After KDHX terminated all Annual Members, Plaintiff Schwarz became an Associate Member of KDHX.  KDHX then terminated Schwarz as an Associate Member.

14.      Plaintiff J. Doe 1 ("Doe 1") is a citizen of Missouri and a Missouri resident.

---

[1] Defendants Bray, Dever, Fernhoff, Finney, Flotron, Haddix, and Pierson are referred to collectively as the "Director Defendants."

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

15.     Doe 1 is an Associate Member of KDHX.

16.     Plaintiff J. Doe 2 ("Doe 2") is a citizen of Missouri and a Missouri resident.

17.     Doe 2 is an Associate Member of KDHX.

18.     Plaintiff J. Doe 3 ("Doe 3") is a citizen of Missouri and a Missouri resident.

19.     Doe 3 is an Associate Member of KDHX.

20.     Plaintiff J. Doe 4 ("Doe 4") is a citizen of Missouri and a Missouri resident.

21.     Doe 4 is an Associate Member of KDHX.

22.     Plaintiff J. Doe 5 ("Doe 5") is a citizen of Missouri and a Missouri resident.

23.     Doe 5 is an Associate Member of KDHX.

24.     Plaintiff J. Doe 6 ("Doe 6") is a citizen of Missouri and a Missouri resident.

25.     Doe 6 is an Associate Member of KDHX.

26.     Plaintiff J. Doe 7 ("Doe 7") is a citizen of Missouri and a Missouri resident.

27.     Doe 7 is an Associate Member of KDHX.

28.     Plaintiff J. Doe 8 ("Doe 8") is a citizen of Missouri and a Missouri resident.

29.     Doe 8 is an Associate Member of KDHX.

30.     Plaintiff J. Doe 9 ("Doe 9") is a citizen of Missouri and a Missouri resident.

31.     Doe 9 is an Associate Member of KDHX.

32.     Plaintiff J. Doe 10 ("Doe 10") is a citizen of Missouri and a Missouri resident.

33.     Doe 10 is an Associate Member of KDHX.

34.     Plaintiff J. Doe 11 ("Doe 11") is a citizen of Missouri and a Missouri resident.

35.     Doe 11 is an Associate Member of KDHX.

36.     Plaintiff J. Doe 12 ("Doe 12") is a citizen of Missouri and a Missouri resident.

37.     Doe 12 is an Associate Member of KDHX.

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

38.     Plaintiff J. Doe 13 ("Doe 13") is a citizen of Missouri and a Missouri resident.

39.     Doe 13 is an Associate Member of KDHX.

40.     Plaintiff J. Doe 14 ("Doe 14") is a citizen of Missouri and a Missouri resident.

41.     Doe 14 is an Associate Member of KDHX.

42.     As Associate Members, Plaintiffs Bernard and Does 1-14 hold at least ten percent (10%) of the voting power of the class of members at KDHX referred to as Associate Members. Plaintiffs Bernard and Does 1-14 are collectively referred to as the "Member Plaintiffs."

43.     To the extent any Member Plaintiff is not considered an Associate Member by KDHX, upon information and belief, Defendants improperly removed such Member Plaintiff(s) from the membership list and/or improperly terminated such Plaintiff(s) as an Associate Member in violation of Missouri law and/or in violation of KDHX Bylaws and policies and/or by abusing authority and discretion or through dishonest and fraudulent acts.

44.     On information and belief, a majority of the Member Plaintiffs were also Annual Members of KDHX.

45.     Joinder of the Plaintiffs in this action is proper pursuant to RSMo § 507.040.

46.     Plaintiffs' asserted rights to relief are in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and there are questions of law and fact common to all of them in this action.

47.     Venue is proper in the Circuit Court of the City of Saint Louis pursuant to RSMo § 508.010.2(1) and RSMo § 355.356.1.

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

## **FACTUAL ALLEGATIONS**

### **General Background**

48.     This lawsuit arises because each Defendant, as a director on the KDHX Board of Directors, has engaged in fraudulent or dishonest conduct, or gross abuse of authority or discretion, with respect to KDHX.  RSMo § 355.356.

49.     The Director Defendants' conduct has come at great cost to KDHX, its members, former members, staff, and wrongly terminated volunteers, DJs, and members.

50.     The KDHX Board and the Director Defendants, in conjunction with Executive Director Kelly Wells, repeatedly engaged in a pattern of misconduct over years in a concerted effort to consolidate power amongst themselves and improperly eliminate, terminate, fire, suspend, and otherwise shut out any dissenting voices or anyone who questions their actions.

51.     As examples, the KDHX Board has:

- illegally removed an entire class of membership ("Annual Members"),

- prior to the filing of this case, terminated many members from the other membership class ("Associate Members") in violation of RSMo § 355.211, without cause, without required process, and in direct contradiction of written promises,

- after the filing of this case, on January 31, 2025, purportedly terminated nearly all remaining Associate Members in violation of RSMo § 355.211, without cause, and without required process,

- improperly changed Bylaws,

- prevented free and fair elections of Board members,

- improperly fired volunteers,

- improperly retaliated against volunteers and members for disagreeing with Board actions or speaking out in favor of saving KDHX,

- suspended a member as retaliation for asking KDHX to simply follow Missouri law,

- taken away voting power and other rights from members that remain, and

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

- selectively enforced its policies and Bylaws only when it serves the Board's interests as opposed to the organization's interests.

52.     Each Director Defendant participated in some or all of the above actions.

53.     The Director Defendants' conduct is in direct contradiction to KDHX's mission "to build community through media." Their actions and inactions have alienated its community, removed large segments of the community from the organization, and brought KDHX to the brink of operational and economic collapse.

54.     Removal of the Defendants as Directors of the KDHX Board of Directors is in the best interests of KDHX.

## KDHX Community Radio Overview

55.     KDHX has operated as an independent, commercial-free, listener-supported community radio station since 1987.

56.     On January 31, 2025, Defendants announced that "the Board is discontinuing new content production starting today" while they alone—without the membership—"determine what is next for KDHX."

57.     Community radio is a unique and important model of broadcasting, that serves as an alternative to commercial and public broadcasting. Wikipedia describes the concept well:

> Community stations serve geographic communities and communities of interest. They broadcast content that is popular and relevant to a local, specific audience but is often overlooked by commercial (or) mass-media broadcasters. **Community radio stations are operated, owned, and influenced by the communities they serve.** They are generally nonprofit and provide a mechanism for enabling individuals, groups, and communities to tell their own stories, to share experiences and, in a media-rich world, to become creators and contributors of media.

See Community Radio, WIKIPEDIA, https://en.wikipedia.org/wiki/Community_radio. (Emphasis added).

58.     KDHX operates our community radio station on 88.1 of the FM dial.

6

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

59.     Until recently, KDHX has been driven by and devoted to the community it serves.

60.     Until recently, KDHX's around-the-clock music programming has been curated exclusively by volunteer producers, many of whom have been on the air for years—if not decades.  KDHX has also produced cultural and public affairs programming, events, and educational media to connect community members to local artists, arts and nonprofit organizations, and other public media institutions.

61.     KDHX had a governance structure that included and valued its volunteers, producers, donors, and the larger community it exists to serve.  The Board of Directors tore down that governance structure against the best interests of the organization.

62.     As examples, KDHX historically allowed its donors and volunteers to be members of KDHX with various rights and governance functions including the right to elect a certain number of directors to the Board.  Recently, KDHX terminated its donor class as members, terminated volunteers, unilaterally took away rights from remaining members, and stopped allowing free and fair elections.  Now, with an isolated and historically small Board of Directors that improperly excludes participation from its members, volunteers, and donors, KDHX is repeatedly taking actions against the best interests of the organization.  Defendants' inactions, such as ceasing to produce Annual Reports and not holding regular meetings with public comment, are also against the best interests of the nonprofit and against standard practice for nonprofits.

63.     KDHX is plagued by highly public dysfunction and controversies created by the Board of Directors, including KDHX's decisions to eliminate the entire class of Annual Members, improperly alter its Bylaws, improperly fire many DJs and volunteers, and change the roles of members, volunteers, and the community in operations and governance.

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

64.     These circumstances continue to escalate and compound.  As a direct result, upon

information and belief, KDHX is experiencing severe operational and economic difficulties.

65.     As examples of problems resulting from the Defendants' actions:

- Monetary contributions to KDHX have decreased significantly (for example, KDHX's publicly available audited financial statements show individual gifts of $818,388 in 2022 and $589,040 in 2023; the statements show total support and revenue of $1,204,845 in 2022 and $959,741 in 2023; the statements show net assets of $391,257 in 2022 and $63,604 in 2022) https://kdhx.org/about-kdhx/public-documents-and-policies

- KDHX was unable to pay its employees for months in 2024, https://www.stlmag.com/news/kdhx-staffers-go-unpaid-for-months/

- As reported by St. Louis Magazine in July 2024, KDHX's "most recent tax returns showed a 38 percent drop in revenue from 2018 to 2023 and less than $3,000 cash in hand at year's end."  *Id.*

- Despite the severe drop in revenues and inability to pay staff, the KDHX Board increased the salary of its Executive Director.

- Nonprofit corporations are required to list on their publicly available Form 990 any employees who are compensated more than $100,000.  KDHX's IRS Form 990 for 2023 lists Kelly Wells' salary at $106,082.  KDHX's IRS Form 990s for 2022 and 2021 show that no person was compensated more than $100,000.  However, KDHX's IRS Form 990 for 2023 lists Kelly Wells' salary at $106,082.  https://kdhx.org/about-kdhx/public-documents-and-policies

- As stated by the Riverfront Times in April 2024, "What happens when the nonprofit radio station you run begins hemorrhaging donors and listeners and, through a series of your own actions, loses the faith of the community it purports to serve?  If that station is KDHX, it would appear that you get a raise." https://www.riverfronttimes.com/music/kdhx-gave-kelly-wells-a-raise-even-as-revenue-plummeted-42393687

- KDHX was recently fined $2,500 by the Corporation for Public Broadcasting (CPB) for failure to disclose important financial information.  The CPB also found that KDHX was not in full compliance with its Diversity Statement.

66.     Certain Plaintiffs and other Members and former Members have asked the

Defendant Directors and KDHX to follow the law, allow fair elections, follow the Bylaws, fairly

apply rules and policies, and/or properly comply with government inquiries and investigations.

8

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

67.     In response, the Defendant Directors and KDHX refused and/or retaliated against those who asked.  The retaliatory actions include termination, suspension, excluding nominees from the ballot, refusing to provide required information, refusing to allow necessary communications, taking rights away from members, and refusing to allow dissenting voices the ability to participate or communicate as required.

68.     KDHX can be turned around with a properly constituted and functioning Board of Directors that follows Missouri law and allows full and fair participation from KDHX membership as required by its Bylaws.

**The Illegal Termination of Nearly All Members Except the Defendant Directors**

69.     On January 31, 2025, at approximately 4:30 pm, Defendants sent an email to nearly all Associate Members.  Exhibit 6 (Email from Defendants to Plaintiff Bernard) (hereinafter the "Mass Termination Email").

70.     The vast majority of Associate Members, including Plaintiffs, received the Mass Termination Email.

71.     By sending the Mass Termination Email, Defendants attempted to effectively eliminate the Associate Member class of KDHX.

72.     The Mass Termination Email states that the recipients are terminated as Associate Members.  Defendants terminated them as members based on Defendants' decision to terminate their volunteer roles.

73.     The Mass Termination Email carves out a select few people who get to remain as the last standing Associate Members (the "Carve Out").

74.     The Carve Out includes the Defendants so that the Defendants now control the Board of Directors and the class of Associate Members.

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

75.    The Carve Out is a transparent power grab that is against Missouri law which prevents such a sudden, unfair, unreasonable termination of members.

76.    The Carve Out is a blatant violation of all versions of the Bylaws over KDHX's four-decade history.  The governance of KDHX was structured so that it had member classes distinct from the Board, and those differing groups each had a role in electing the Board, holding meetings, governing the organization, and voting in the event of a potential sale or dissolution.

77.    The timing of Defendants' latest abuse of power and illegal action is very telling. The Mass Termination Email was sent:

- two days after this case was filed,

- days or weeks before the February Annual Meeting and Board of Directors election,

- while Defendants are attempting to sell KDHX assets or dissolve KDHX which would require a two-thirds vote of the membership; and

- on the same day that the Bylaws provide for determining which Associate Members get to vote in the Annual Meeting.

78.    The Mass Termination Email is the last step in Defendants' plan to take all power away from the organization's members and place it with themselves.

79.    The Mass Termination Email is the last step in Defendants' plan to alone determine the future of KDHX without anyone else involved, dissenting, or voting against their hand-picked candidate or their plans to sell KDHX's assets or take action under Article IX of the Bylaws.

80.    Defendants are using the Mass Termination Email to prevent membership from participating in decisions on the future of KDHX, contrary to Missouri law and the Bylaws.

81.    Defendants timed the Mass Termination Email in order to try to prevent the recipients from voting in the upcoming February Board of Directors election, prevent them from

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

82.     Defendants timed the Mass Termination Email in order to try to prevent the recipients from participating in the upcoming Annual Meeting or having a vote when Defendants attempt to take action under Article IX including dissolution of KDHX or the sale of assets.

83.     If this mass termination is allowed to stand, the Defendants will be able to hold elections and votes without member involvement.

84.     The Mass Termination Email is a blatant violation of RSMo 355.211.  It does not allow an opportunity to be heard, a fair or reasonable procedure, or prior written notice before becoming effective.

85.     Defendants sent the Mass Termination Email at the end of the day on January 31 saying that the recipients cannot continue with the station "after January 31."  Exhibit 6. Defendants also stated it is "effective immediately."

86.     Defendants' Mass Termination Email is a dishonest, fraudulent act against the best interests of the organization.  At best, it was an abuse of discretion and authority.

**The Illegal Termination of Annual Members and Other Improper Bylaws Changes**

87.     Prior to 2018, KDHX had two classes of members: Annual Members and Associate Members.

88.     Any person who made a "minimum membership contribution" could be an Annual Member.  The class of Annual Members was important for incentivizing and promoting fundraising and community involvement—two critical elements for a nonprofit community radio station that relies on the community to donate money and time.   Annual Members had meetings, voting rights, and elected three Directors to the KDHX Board of Directors.

89.     The entire class of Annual Members was illegally and improperly eliminated with the 2018 Bylaws.

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

90.    Contracted volunteers not only create and program content for KDHX, they serve as members of the corporation (in the member class known as "Associate Members"), with various rights, duties, and governance functions, including the right to elect Directors to the KDHX Board of Directors.  After the elimination of Annual Members, the class of Associate Members became the only membership class of KDHX.

91.    After the Annual Members were eliminated, the Associate Members' rights have been diminished and ignored by the Board.  The Board has marginalized KDHX's remaining members and their rights without their vote or approval.

92.    In summary, the Board terminated all Annual Members, eliminated and ignored certain rights of the Associate Members, failed to recognize nominations to the Board submitted by the Associate Members, and failed to fill seats on the Board in order to diminish the power of its members and the community and consolidate power among the select group of Directors and the Executive Director.  This conduct was not and is not in the best interests of KDHX.

93.    The KDHX Board of Directors has purportedly made many changes to its Bylaws in recent years.

94.    On information and belief, the 2010 version of the KDHX Bylaws is the last version to be voted upon or approved by any class of members.

95.    Article IX of the 2010 Bylaws is titled "**AMENDMENT OF BY-LAWS**."

96.    Article IX states "…alteration of, amendments to, or repeal of the By-Laws or the adoption of new By-Laws shall require no greater vote than a majority of the associate members present at a meeting where a quorum is present."

97.    This language in Article IX existed for many years.  Article IX of the 2002 KDHX Bylaws is also titled "**AMENDMENT OF BY-LAWS**" and states "…the alteration of,

12

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

amendments to, or repeal of the By-Laws or the adoption of new By-Laws shall require no greater vote than a majority of the associate members present at a meeting where a quorum is present."

98.     Despite this clear requirement that a majority vote of associate members is required to alter, amend, or repeal the Bylaws, the KDHX Board of Directors continues to change the Bylaws without allowing the associate members to vote.

99.     The KDHX Board of Directors changed the Bylaws in 2018 and in 2021.

100.     Each time, the KDHX Board changed the Bylaws to terminate a membership class, reduce membership rights, and/or consolidate power in the hands of the Board and the Executive Director.

101.     Each time, the KDHX Board did so without following the Bylaws.

102.     Each time, the KDHX Board did so without allowing the associate members to vote.

103.     In 2018, the Board illegally changed the Bylaws to eliminate the class of Annual Members.

104.     Furthermore, among other dishonest and fraudulent changes, the 2018 Bylaws were altered to eliminate the requirement that associate members must vote on any proposed changes to the Bylaws.  In other words, the Board unilaterally gave itself the unilateral authority to amend the Bylaws.  It did so in blatant disregard of the Bylaws, the rights of the members, and the best interests of the organization.  Knowing its conduct was improper, the Board did without allowing its members to vote.

105.     The Missouri Nonprofit Corporation Law required KDHX to allow its members to vote on whether to terminate any class of members.  RSMo § 355.611.

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

106.    In violation of the Missouri Nonprofit Corporation Law and its own Bylaws, KDHX did not give proper notice to its members, did not properly adopt a resolution proposing an amendment to terminate a class of members, and did not obtain approval of two-thirds of the votes cast by each class.

107.    Similarly, the Board's secretive, unilateral action to change the 2018 Bylaws was not made public, was not published, and was not provided to the terminated members.

108.    As a result of those improper and illegal 2018 Bylaws changes, the Board has taken actions to strip power and rights from the remaining Associate Members.

109.    In 2021, the Board again changed the Bylaws without proper notice or vote.

110.    In 2021, the Board again changed the Bylaws to further consolidate power in the hands of the Board and further reduce the rights of the Associate Members.

111.    For example, the 2018 Bylaws allow the Associate Members to vote on new Associate Members, whereas the 2021 Bylaws take that power away from the members and place it with the Executive Director.

112.    For example, the 2018 Bylaws allow the Associate Members to vote on termination of someone's associate membership, whereas the 2021 Bylaws take that power away from the members and place it with the Executive Director.

113.    For example, the 2018 Bylaws allow the Associate Members to call for a special meeting of the Associate Members, whereas the 2021 Bylaws take that power away from the members.

114.    For example, the 2018 Bylaws allow the Associate Members to elect an administrator who then convenes the membership meetings, whereas the 2021 Bylaws take that power away from the members and place it with the Board of Directors.

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

115.    The Board knowingly and intentionally failed to follow Missouri law and the KDHX Bylaws when voting for the above changes.

116.    For the above reasons, the 2018 changes and the 2021 changes to the KDHX Bylaws are invalid and should be declared invalid.

117.    The Board should not be permitted to continue utilizing the improperly amended Bylaws to commit abuses of power or discretion or to take actions contrary to KDHX's best interests.

118.    The Board unilaterally stripped rights from the members through further Bylaws changes, by retaliating against members who disagree with the Board, by selectively enforcing Bylaws and policies when it serves the Board's interests instead of the organization's interests, the volunteers' interests, the employees' interests, or the overall membership's interests.

119.    The Board's unilateral control and unchecked power directly resulted in DJs being terminated, volunteers striking, decreased donations, cancelled meetings, declining revenues, inability to timely or fully pay wages, bills, and debts, and decisions being made in secret without full Board participation and without community or membership involvement.

120.    The Board's dishonest and fraudulent conduct and gross abuses of authority and discretion violate Missouri law.

**<u>Rigged, Unfair Elections</u>**

121.    The KDHX Bylaws historically have permitted the members to elect Directors to the Board of Directors.

122.    The KDHX Bylaws historically allowed Associate Members to elect Directors in order for the volunteers, producers, and DJs to have representation on the Board.

15

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

123.    The KDHX Bylaws historically allowed Annual Members to elect Directors in order for donors, supporters, and the greater community to have representation on the Board.

124.    In the 2010 Bylaws, Article II, Section 2, Part E requires three of the Directors for the Board to be elected by the Associate Members.

125.    In the 2018 Bylaws, Article II, Section 2, Part D requires three of the Directors for the Board to be elected by the Associate Members.

126.    In the 2021 Bylaws, Article II, Section 2, Part D requires three of the Directors for the Board to be elected by the Associate Members.

127.    Despite these requirements, the Board of Directors terminated the entire class of Annual Members such that the Annual Members no longer have representation on the Board.

128.    Despite these requirements, the Board of Directors no longer permits the Associate Members to have free and fair nominations and elections for three members to the Board.

129.    It is against the best interests of the organization to not allow the Associate Members to have proper and full representation on the Board.  Not only is it against the Bylaws, the Associate Members are largely comprised of the volunteers who provide the station's content.  Without volunteers, there would be no operational KDHX.

130.    Currently, one Director (Caryn Haddix) was elected by an Associate Membership election.  However, the Board improperly manipulated the 2024 election such that Haddix, the Board's chosen nominee, was unopposed.

131.    As reported by the Riverfront Times on March 5, 2024, "KDHX Elections Have Just 1 Candidate, Hand-Picked by the Board."  The article explains how the Board of Directors has made "a mockery of democracy" that "flouts" the Bylaws.

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

132.     Pursuant to the Bylaws, the Associate Members nominated two candidates for election to the Board in 2024:  James Williams and Kip Loui.

133.     The Board of Directors refused to allow these Associate Member nominees to be on the ballot.

134.     The Board of Directors admitted that it unilaterally chose to not place Williams and Loui on the ballot.  The Board's explanation did not provide any permitted or logical reason for this action.

135.     According to the Board, nominee James Williams was not allowed on the ballot because he "has been asked to join a board working group."

136.     According to the Board, nominee Kip Loui was not allowed on the ballot because he "is currently suing the board of KDHX" for not being seated by the Board after being elected to the Board.  The Board's circular logic defies the Bylaws and common sense.

137.     The Board's decision resulted in a ballot with one person – the Board's chosen candidate – running unopposed.

138.     By removing the nominees from the ballot, the Board intentionally undermined and rigged the election to strip power and representation away from its Associate Members and silence or eliminate dissenting views.

139.     The Board's dishonest and fraudulent conduct and gross abuses of authority and discretion was in violation of Missouri law.

**Dishonest, False Statements and Selective Enforcement of Policies and Bylaws Contrary to the Best Interests of KDHX**

140.     In an event known as the KDHX Friday Massacre, the Board of Directors fired ten volunteer DJs and threatened another dozen that they will be taken off air unless they participated in a mediation process.  This happened on one day in September 2023.

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

141.    The terminated DJs included D. Ridgley Brown (Hound Dog Brown, "Boogie On Down"), Caron House ("Wax Lyrical"), Roy Kasten ("Feel Like Going Home"), Michael Kuelker ("Positive Vibrations"), Christopher Lawyer ("Hip City"), Richard Reese ("Pop! The Beat Bubble Burst"), Christopher Schwarz (DJ X24, "Next Exit"), Paul Stark (Paul "Grandfather" Stark, "Musical Merry-Go-Round"), Robert Sweet (bobEE Sweet, "Uncontrollable Urge") and John Wendland ("Memphis to Manchester") (collectively referred to herein as the "DJs").

142.    In September 2023, the Board of Directors breached contracts and violated its policies by terminating the DJs as volunteers.

143.    Then, in October 2023, the Board of Directors violated Missouri law and violated its bylaws and policies by terminating the DJs as Members of KDHX.

144.    The Board of Directors did so dishonestly and fraudulently in violation of Missouri law as described in detail below.  In summary, the Board concocted a scheme to fire the DJs in order to manufacture a reason to terminate them as Associate Members.  The Board promised the DJs in writing that they would not be terminated as Associate Members only to immediately turn around and vote as a Board to terminate them as Associate Members.

145.    Each DJ entered into a contract with KDHX titled Volunteer Producer Agreement.

146.    Prior to changing the title of such contracts to Volunteer Producer Agreement, KDHX titled them KDHX Producer Contract.  An example Volunteer Producer Agreement is attached as Exhibit 1.  The Volunteer Producer Agreements are referred to herein as the "Contract" or "Contracts."

147.    KDHX required each DJ to agree to a Contract.

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

148.    The DJs at KDHX are also known as "community producers" and "content producers."

149.    The Contracts hired each DJ to serve as a KDHX producer.

150.    The Contracts provide the terms upon which the DJs gave services to KDHX and KDHX gave vital positions of privilege to Plaintiffs.

151.    As an example to illustrate the time and effort Plaintiffs spent performing services for KDHX, DJ Reese spent approximately 10 hours per week preparing and promoting the show and 2 hours per week hosting the show totaling thousands of hours of work over his 15 years of service as a producer.

152.    The Contracts set forth how KDHX could suspend or terminate the producers. Exhibit 1, Section 2 ("**PRODUCER PROHIBITIONS**").

153.    The Contracts list 17 "producer prohibitions" violation of which "could result in suspension or immediate dismissal." *Id.*

154.    The Contracts set forth the following terms, among others:

- KDHX "approved" each DJ as a producer.  Exh. 1, Section 1.

- The producers have responsibilities.  *Id.*

- "Being a community producer for KDHX is a privilege" and "With this privilege comes the great responsibility of following FCC and KDHX rules and regulations…."  *Id.*

- Producers "fulfill a vital role" in KDHX's success.  *Id.*

- KDHX's policies are included in the Contracts.

- An explanation of the requirements and prohibitions for producers.  *Id.* at Section 2.

- Requirements that producers must:  follow certain legal requirements, miss no more than six shows annually, be on time, assist other producers in making smooth program transitions, clean up the studio, report problems to staff, be

19

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

responsible for proper conduct of guests, and keep up with station information on a weekly basis at minimum. *Id.*

- An explanation of regularly conducted "producer evaluation[s]." *Id.*

- Facilities available to the producers and reserved parking provided by KDHX to producers. *Id.* at Section 6.

- Recognition that the producer role is a position of value and a position that intersects with and enhances producers' "professional interest[s]" including, for example, providing DJ services "in the community for pay," "products or events in which [producers] have a professional or personal interest," and "acceptable normal promotional" activities." *Id.* at Section 7.

155.    On or about September 22, 2023, KDHX sent nearly identical emails to the DJs stating that KDHX decided to terminate the DJs and terminate their Contracts (the "DJ termination emails"). An example DJ termination email is attached as Exhibit 2.

156.    KDHX sent the DJ termination emails from the Board of Directors' email account, kdhxboard@kdhx.org.

157.    KDHX's DJ termination emails were signed by Gary Pierson as the representative for the entire Board of Directors.

158.    KDHX's DJ termination emails stated that KDHX is moving forward with a "new vision for KDHX" and was terminating the DJs "based on our reason to believe that your conduct is not consistent with the vision for KDHX as we move forward."

159.    KDHX's DJ termination emails did not identify any reason allowed under the Contracts to suspend or terminate DJs.

160.    KDHX's DJ termination emails ended by stating that KDHX's decision to terminate the DJs "pertains specifically to your role as a KDHX volunteer and does not alter your associate member status."

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

161.     Despite an explicit assurance to the contrary, KDHX then promptly sent letters to the DJs stating KDHX was terminating them as associate members.

162.     On or about October 24, 2023, KDHX sent nearly identical letters to each DJ stating that KDHX elected "to terminate your status as an Associate Member of KDHX" (the "member termination letters").  An example member termination letter is attached as Exhibit 3.

163.     KDHX's member termination letters stated that "the Board of Directors has elected … to terminate your status as an Associate Member of KDHX."

164.     KDHX's member termination letters stated that the Board of Directors terminated the DJs because "you are no longer an active KDHX volunteer."

165.     KDHX provided no other reason or cause for terminating the DJs' memberships.

166.     The Board did not follow or abide by the Contract when terminating the DJs.

167.     The Board violated its policies and Bylaws when terminating the DJs as producers and as associate members.

168.     Instead of having no impact on DJs' Associate Member status, the Board made the decision to terminate DJs as producers as a pretense to improperly terminate them as Associate Members.

169.     The Board's decision to terminate the DJs as Associate Members confirmed that the Board had no proper justification or cause to terminate the DJs as producers.

170.     KDHX's Board of Directors carried out this dishonest scheme to further concentrate power in the Board and Executive Director Kelly Wells, to silence or remove any members who questioned the Board or Wells, and to be able to continue carrying out its plan to abuse discretion and authority and to take actions outside of its Bylaws, contrary to Missouri law, and without input or meaningful involvement from its members.

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

171.    The Board's termination emails were false and contained intentional, knowing misrepresentations.

172.    The Board's member termination letters were false and contained intentional, knowing misrepresentations.

173.    To provide cover for the Board's improper actions, the Board President made false and disparaging public comments about the DJs intentionally smearing the DJs and their reputations.

174.    For example, Defendant Pierson as Board President falsely stated to the media that the DJs were not "on board with" inclusivity, combating racism, or combating gender discrimination.  Pierson said: "It's clear that some of our community are not on board with that. We need to build the capacity to combat things like racist and gender discrimination, and patriarchy and all of those things. And the reality is that these individuals that we're talking about, it's just not consistent with those goals to have them be part of the organization anymore." https://www.stlpr.org/arts/2023-09-22/kdhx-fires-10-more-volunteer-djs-as-leaders-try-to-assert-control-over-station-in-turmoil

175.    The Board carried out each termination of each DJ in bad faith in violation of Missouri law, RSMo § 355.211.

176.    The Board terminated each DJ without a fair and reasonable procedure as required by Missouri law, RSMo § 355.211.

177.    In carrying out the terminations, the Board violated Missouri statutory law and failed to follow the procedure described in any version of its Bylaws or other relevant policies.

178.    For example, the Board did not provide Plaintiffs with "prior written notice of the … termination and the reasons therefor."

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

179.    The member termination letters stated that the Board terminated the DJs as members because they were "no longer an active KDHX volunteer."

180.    The Board provided no other reason or cause for terminating the DJs' memberships.

181.    The Board's stated reason for the terminations was false.

182.    The Board's stated reason for the terminations is contradicted by the Board's stated promise to the DJs the month prior.

183.    The Board's letters demonstrate the Board's bad faith driving these terminations.

184.    For example, the Board did not provide the DJs with a proper opportunity to be heard by a person or persons authorized to decide that the proposed termination not take place.

185.    For example, the Board intentionally made false and disparaging comments about the DJs and smeared the DJs and their reputations as part of the termination scheme.

186.    For example, KDHX did not carry out the terminations with a fair and reasonable procedure taking into consideration all of the relevant facts and circumstances.

187.    The entire procedure was a charade from the outset.  The charade is evidenced by the Board's contradicting termination letters and its public relations strategy of falsely smearing the DJs to justify the terminations.

188.    The Board's decision regarding terminating the DJs' memberships was made prior to any process taking place.

189.    The Board's improper, premeditated scheme to get rid of the DJs began prior to the termination letters as evidenced by the September 2023 decision to terminate the DJs as producers.

190.    The purported procedure was done in bad faith, unfairly, and unreasonably.

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

191.    On or about November 20, 2023, KDHX sent letters to the DJs regarding their "Appeal from Termination."  The letters stated that the Personnel Committee of the Board of Directors of KDHX affirmed the terminations.

192.    However, KDHX has no records regarding actions taken by any KDHX committee or actions without a meeting.

193.    KDHX verified on October 31, 2024 that no such records exist.

194.    In summary, KDHX's letters are contradictory, KDHX's public statements contradict the letters, and KDHX has no documentation to show that any process took place, much less a fair and reasonable process conducted in good faith as required by Missouri law.

195.    Even if KDHX did follow its Bylaws and procedures, the process would not have been in compliance with Missouri law.  The Bylaws state the standards for termination, none of which exist for any DJ.

196.    Using false statements, the Board stripped the DJs of their rights as members and their privileged positions as producers in order to eliminate dissenting voices, consolidate power within the Board, remove the DJs as voting members of the only remaining membership class, and/or retaliate against the DJs for disagreeing with the Board's mismanagement of KDHX.  To add insult to injury, KDHX then smeared the DJs in the media with false and disparaging public statements intended to harm their professional reputations.

**Other Improper Retaliation Taken By the Board of Directors Against its Members**

197.    The Board of Directors has taken other actions to improperly retaliate against KDHX members.

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

198.    In 2024, KDHX violated Missouri law by refusing to cooperate with Associate Member Anne Silverstein's request to inspect and copy corporate records to which she and all members of KDHX are entitled pursuant to RSMo § 355.826.

199.    On July 16, 2024, pursuant to RSMo § 355.826 ("Members inspection of records"), Ms. Silverstein sent written notice to KDHX requesting to inspect and copy certain KDHX records.  Exhibit 4, p. 2.

200.    Silverstein's request to inspect and copy provided KDHX more than the minimum five business days' notice.  *Id.*

201.    KDHX did not respond to Silverstein's request.

202.    KDHX's blatant violation of Missouri law forced Silverstein to sue KDHX for inspection of the records.

203.    After the lawsuit was filed, KDHX and the Board of Directors continued to ignore Silverstein, did not respond to the letter or follow-up email, and evaded service of the lawsuit on numerous occasions including by not having an open registered office or available registered agent during office hours on weekdays as required by Missouri law.

204.    Instead, on August 16, the Board decided to suspend Silverstein because she asked for records that Missouri law required the Board to provide.  Exhibit 5 (email from Pierson to Silverstein).

205.    The Board's email to Silverstein was sent from the Board's email address and was signed by Defendant Pierson on behalf of the Board.  *Id.*

206.    The Board's actions pertaining to Ms. Silverstein are a continuation of the dishonest and fraudulent conduct at issue in this lawsuit.

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

207.    In 2023, in response to the Board's improper terminations of many DJs as described above, certain other volunteers went on strike or otherwise expressed disagreement with the Board's actions (collectively, the "dissenting volunteers").

208.    In response to the dissenting volunteers, the Board purports to have terminated them as Associate Members.  However, the Board's purported termination was not accompanied by any communication or process.

209.    The Missouri Nonprofit Corporation Law requires any expulsion, termination, or suspension of a member of a public benefit corporation to involve a fair and reasonable process. RSMo § 355.211.

210.    On information and belief, despite the requirements of RSMo § 355.211 and the Bylaws, the Board did not provide notice or an opportunity to be heard or any procedure whatsoever.

211.    When Rich Reese was terminated as a volunteer DJ in 2023, he repeatedly reached out to KDHX attempting to understand the situation and be permitted any type of process or procedure.  Reese pointed out that he had not been given notice, indication, prior suspension, or any opportunity for mediation.  KDHX ignored Reese.  KDHX refused to engage in any process or dialogue.

212.    In late 2024, Associate Member Courtney Dowdall and Kip Loui filled two of the Board positions reserved for election by the Associate Members.

213.    Defendants created a new rule that directors, including Dowdall and Loui, were not allowed to interact with the volunteers without Executive Director Kelly Wells' involvement.

214.    In other words, the Defendants created a rule preventing the Associate Members from speaking directly to their Board representatives.  Defendants' conduct is contrary to the

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

Bylaws and is an abuse of any discretion or authority arguably afforded the Defendants to dictate who the Associate Members or certain Directors can speak to.

215.    The Defendants' Orwellian rule has no basis in the Bylaws or common sense.

216.    The Board's repeated pattern of retaliating against anyone who speaks against them or their decisions is not in the best interests of the organization.

217.    It is contrary to the best interests of KDHX for the Board to suspend members for seeking to exercise a statutory right.

218.    It is contrary to the best interests of KDHX for the Board to retaliate against its members for expressing their opinions.

219.    It is contrary to the best interests of KDHX for the Board to abuse its discretion or authority to retaliate against its members.

220.    It is contrary to the best interests of KDHX to for the Board to prohibit some or all Associate Members from speaking to their Board representatives.

221.    KDHX does not benefit from a consolidation of power in the hands of a few who make decisions in secret, without membership involvement, without involvement of the full Board of Directors, and without proper consideration for Missouri law, the Bylaws, or the organization's membership, volunteers, or the community.

222.    The Board's repeated pattern of improper retaliation forces certain Plaintiffs to retain their anonymity from Defendants in this litigation.

223.    Certain Plaintiffs are volunteer producers and DJs, and Defendants have improperly terminated other such individuals as volunteers and as Associate Members for disagreeing with Defendants' actions, for seeking to exercise legal rights, or for seeking to exercise membership rights.

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

224.     KDHX and the Board has made clear their intent to retaliate against any member who is a party to a lawsuit involving KDHX regardless of the merits or the person's legal rights.

225.     The Board wrote to its members during the Associate Member's 2024 election and stated that nominees will not be considered if they are part of a lawsuit.

226.     Defendants followed through on their stated intent to retaliate during the 2024 election.

227.     Defendants followed through on their stated intent to retaliate when Ms. Silverstein asked for documents that Missouri law required KDHX to provide her as a member.

228.     Defendants followed through on their retaliation plan when the most recent Associate Member representatives to the Board were seated.

229.     Defendants followed through on their retaliation plan when they stopped allowing public discussion at meetings and cancelled meetings or reduced the number of meetings.

230.     Defendants intend to improperly retaliate against any member, volunteer, or director who speaks out against Defendants' conduct or plans or who challenges Defendants' plan to fundamentally change the nature of KDHX, its intended system of member-oriented governance, and/or its very existence as a community radio station or FM radio station.

231.     Defendants' retaliation plan equates to preventing members from asserting their legal rights.

232.     Defendants' retaliation plan is intended, in part, to take voting power away from the members and prevent certain members from voting in upcoming elections or meetings.

233.     Defendants' pattern of retaliation is against the best interests of KDHX.

234.     Defendants' pattern of retaliation justifies removal pursuant to RSMo § 355.356.

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

235.    Plaintiffs will suffer substantial and irreparable harm if terminated as members. Plaintiffs would lose their right participate in the governance of KDHX including the right to vote in upcoming Board elections and the right to vote regarding "Actions Affected by Article IX." Plaintiffs would lose their legal right to challenge certain conduct prohibited by statute.

236.    The Member Plaintiffs are fearful of harm resulting from Defendants' retaliation, and the Member Plaintiffs' fear is reasonable. In fact, Defendants have followed through on their retaliation threats with respect to other members who attempted to exercise legal rights or participate in KDHX governance.

237.    The Member Plaintiffs, along with the entire KDHX membership, are subject to a high risk of disenfranchisement and losing their right to participate in KDHX's governance if the Member Plaintiffs cannot maintain their anonymity.

238.    For the above reasons, the Member Plaintiffs are particularly vulnerable to retaliation from Defendants and good cause exists for the Doe Plaintiffs to file with pseudonyms.

239.    Defendants' attempt to terminate the Plaintiffs and nearly all Associate Members does not remove the fear or risk of retaliation. Plaintiffs seek the reinstatement of all Associate Members who Defendants attempted to terminate on January 31, 2025. On information and belief, if Plaintiffs' identities are known to Defendants, Defendants will simply manufacture another excuse to terminate Plaintiffs after their reinstatement.

**COUNT I – REMOVAL OF DIRECTOR BRAY PURSUANT TO RSMO § 355.356**

240.    The Member Plaintiffs allege and incorporate by reference the above allegations as if fully set forth herein.

241.    KDHX is a Missouri nonprofit corporation with members and a Board of Directors.

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

242.   Each Member Plaintiff is an Associate Member of KDHX.

243.   Defendant Bray is a director on KDHX's Board of Directors.

244.   Defendant Bray, as a director on the KDHX Board of Directors, has engaged in fraudulent or dishonest conduct, or gross abuse of authority or discretion, with respect to KDHX.

245.   Defendant Bray was in a position of leadership on the KDHX Board of Directors during relevant timeframes and has held the position of Secretary.

246.   Defendant Bray participated as director in some or all of the improper actions described above.

247.   Defendant Bray's conduct as a director has come at great cost to KDHX, its members, former members, staff, and wrongly terminated volunteers, DJs, and members.

248.   Removal of Defendant Bray as a director of the KDHX Board of Directors is in the best interest of KDHX.

WHEREFORE, the Member Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against Defendant on this Count, remove Defendant as a director on KDHX's Board of Directors, award costs, and such other and further relief as the Court deems just and proper.

## COUNT II – REMOVAL OF DIRECTOR DEVER PURSUANT TO RSMO § 355.356

249.   The Member Plaintiffs allege and incorporate by reference the above allegations as if fully set forth herein.

250.   KDHX is a Missouri nonprofit corporation with members and a Board of Directors.

251.   Each Member Plaintiff is an Associate Member of KDHX.

252.   Defendant Dever is a director on KDHX's Board of Directors

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

253.    Defendant Dever, as a director on the KDHX Board of Directors, has engaged in fraudulent or dishonest conduct, or gross abuse of authority or discretion, with respect to KDHX.

254.    Defendant Dever was in a position of leadership on the KDHX Board of Directors during relevant timeframes and has held the position of President.

255.    Defendant Dever participated as director in some or all of the improper actions described above.

256.    Defendant Dever's conduct as a director has come at great cost to KDHX, its members, former members, staff, and wrongly terminated volunteers, DJs, and members.

257.    Removal of Defendant Dever as a director of the KDHX Board of Directors is in the best interest of KDHX.

WHEREFORE, the Member Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against Defendant on this Count, remove Defendant as a director on KDHX's Board of Directors, award costs, and such other and further relief as the Court deems just and proper.

## COUNT III – REMOVAL OF DIRECTOR FERNHOFF PURSUANT TO RSMO § 355.356

258.    The Member Plaintiffs allege and incorporate by reference the above allegations as if fully set forth herein.

259.    KDHX is a Missouri nonprofit corporation with members and a Board of Directors.

260.    Each Member Plaintiff is an Associate Member of KDHX.

261.    Defendant Fernhoff is a director on KDHX's Board of Directors

31

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

262.    Defendant Fernhoff, as a director on the KDHX Board of Directors, has engaged in fraudulent or dishonest conduct, or gross abuse of authority or discretion, with respect to KDHX.

263.    Defendant Fernhoff was in a on the KDHX Board of Directors during relevant timeframes.

264.    Defendant Fernhoff participated as director in some or all of the improper actions described above.

265.    Defendant Fernhoff's conduct as a director has come at great cost to KDHX, its members, former members, staff, and wrongly terminated volunteers, DJs, and members.

266.    Removal of Defendant Fernhoff as a director of the KDHX Board of Directors is in the best interest of KDHX.

WHEREFORE, the Member Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against Defendant on this Count, remove Defendant as a director on KDHX's Board of Directors, award costs, and such other and further relief as the Court deems just and proper.

## COUNT IV – REMOVAL OF DIRECTOR FINNEY PURSUANT TO RSMO § 355.356

267.    The Member Plaintiffs allege and incorporate by reference the above allegations as if fully set forth herein.

268.    KDHX is a Missouri nonprofit corporation with members and a Board of Directors.

269.    Each Member Plaintiff is an Associate Member of KDHX.

270.    Defendant Finney is a director on KDHX's Board of Directors.

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

271.    Defendant Finney, as a director on the KDHX Board of Directors, has engaged in fraudulent or dishonest conduct, or gross abuse of authority or discretion, with respect to KDHX.

272.    Defendant Finney was in a position of leadership on the KDHX Board of Directors during relevant timeframes and has held the position of Treasurer.

273.    Defendant Finney participated as director in some or all of the improper actions described above.

274.    Defendant Finney's conduct as a director has come at great cost to KDHX, its members, former members, staff, and wrongly terminated volunteers, DJs, and members.

275.    Removal of Defendant Finney as a director of the KDHX Board of Directors is in the best interest of KDHX.

WHEREFORE, the Member Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against Defendant on this Count, remove Defendant as a director on KDHX's Board of Directors, award costs, and such other and further relief as the Court deems just and proper.

## COUNT V – REMOVAL OF DIRECTOR FLOTRON PURSUANT TO RSMO § 355.356

276.    The Member Plaintiffs allege and incorporate by reference the above allegations as if fully set forth herein.

277.    KDHX is a Missouri nonprofit corporation with members and a Board of Directors.

278.    Each Member Plaintiff is an Associate Member of KDHX.

279.    Defendant Flotron is a director on KDHX's Board of Directors.

280.    Defendant Flotron, as a director on the KDHX Board of Directors, has engaged in fraudulent or dishonest conduct, or gross abuse of authority or discretion, with respect to KDHX.

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

281.    Defendant Flotron was on the KDHX Board of Directors during relevant timeframes.

282.    Defendant Flotron participated as a director in some or all of the improper actions described above.

283.    Defendant Flotron's conduct as a director has come at great cost to KDHX, its members, former members, staff, and wrongly terminated volunteers, DJs, and members.

284.    Removal of Defendant Flotron as a director of the KDHX Board of Directors is in the best interest of KDHX.

WHEREFORE, the Member Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against Defendant on this Count, remove Defendant as a director on KDHX's Board of Directors, award costs, and such other and further relief as the Court deems just and proper.

## COUNT VI – REMOVAL OF DIRECTOR HADDIX PURSUANT TO RSMO § 355.356

285.    The Member Plaintiffs allege and incorporate by reference the above allegations as if fully set forth herein.

286.    KDHX is a Missouri nonprofit corporation with members and a Board of Directors.

287.    Each Member Plaintiff is an Associate Member of KDHX.

288.    Defendant Haddix is a director on KDHX's Board of Directors

289.    Defendant Haddix, as a director on the KDHX Board of Directors, has engaged in fraudulent or dishonest conduct, or gross abuse of authority or discretion, with respect to KDHX.

290.    Defendant Haddix was on the KDHX Board of Directors during relevant timeframes.

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

291.    Defendant Haddix participated as director in some or all of the improper actions described above.

292.    Defendant Haddix's conduct as a director has come at great cost to KDHX, its members, former members, staff, and wrongly terminated volunteers, DJs, and members.

293.    Removal of Defendant Haddix as a director of the KDHX Board of Directors is in the best interest of KDHX.

WHEREFORE, the Member Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against Defendant on this Count, remove Defendant as a director on KDHX's Board of Directors, award costs, and such other and further relief as the Court deems just and proper.

## COUNT VII – REMOVAL OF DIRECTOR PIERSON PURSUANT TO RSMO § 355.356

294.    The Member Plaintiffs allege and incorporate by reference the above allegations as if fully set forth herein.

295.    KDHX is a Missouri nonprofit corporation with members and a Board of Directors.

296.    Each Member Plaintiff is an Associate Member of KDHX.

297.    Defendant Pierson is a director on KDHX's Board of Directors.

298.    Defendant Pierson, as a director on the KDHX Board of Directors, has engaged in fraudulent or dishonest conduct, or gross abuse of authority or discretion, with respect to KDHX.

299.    Defendant Pierson was in a position of leadership on the KDHX Board of Directors during relevant timeframes and has held the position of President.

300.    Defendant Pierson participated as director in some or all of the improper actions described above.

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

301.    Defendant Pierson's conduct as a director has come at great cost to KDHX, its members, former members, staff, and wrongly terminated volunteers, DJs, and members.

302.    Removal of Defendant Pierson as a director of the KDHX Board of Directors is in the best interest of KDHX.

WHEREFORE, the Member Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against Defendant on this Count, remove Defendant as a director on KDHX's Board of Directors, award costs, and such other and further relief as the Court deems just and proper.

## COUNT VIII – DECLARATORY JUDGMENT AGAINST DEFENDANT KDHX

303.    Plaintiff Schwarz and the Member Plaintiffs allege and incorporate by reference the above allegations as if fully set forth herein.

304.    Prior to 2018, the KDHX Bylaws set forth two classes of members:  Annual Members and Associate Members.  Exhibit 7 (2010 Bylaws).

305.    In 2018, Defendant KDHX illegally changed its Bylaws to eliminate the class of Annual Members.  Exhibit 8 (2018 Bylaws).

306.    This act eliminated KDHX's donor class from membership.  This act decreased the power of KDHX members and increased the power of the KDHX Board and Executive Director.

307.    At the time of the illegal change, Plaintiff Schwarz was an Annual Member.

308.    The Missouri Nonprofit Corporation Law required KDHX to provide proper notice to its members of a meeting concerning termination of a class of members, required KDHX to properly adopt a resolution proposing an amendment to terminate a class of members,

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

and required KDHX to allow its members to vote on whether to terminate any class of members. RSMo § 355.611.

309.    In violation of the Missouri Nonprofit Corporation Law and its own Bylaws, KDHX did not give proper notice to its members, did not properly adopt a resolution proposing an amendment to terminate a class of members, and did not obtain approval of two-thirds of the votes cast by each class.  Exhibit 12 (2018 Board Meeting Minutes).

310.    In further violation of its own Bylaws, KDHX did not provide for or obtain a vote of the associate members to amend the Bylaws.  *Id.*

311.    The 2010 Bylaws were in effect at the beginning of 2018.

312.    Article IX of the 2010 Bylaws is titled "**AMENDMENT OF BYLAWS**" and states in part: "the alteration of, amendments to, or repeal of the By-Laws or the adoption of new By-Laws shall require no greater vote than a majority of the associate members present at a meeting where a quorum is present."  Exh. 7, Article IX.

313.    As a result of those improper and illegal Bylaws changes, the Board took further steps to strip rights from its members by improperly amending the Bylaws in 2021.  The improper 2018 Bylaws were improperly amended in 2021 without proper notice or vote.

314.    As a result of the improper and illegal Bylaws changes in 2018 and 2021, the Board again took more actions to strip power and rights from the remaining Associate Members.

315.    Each of the Member Plaintiffs are part of the remaining group of Associate Members.

316.    Defendant KDHX improperly and illegally changed the Bylaws to consolidate power in the hands of the Board and Executive Director and to reduce the rights of its members.

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

317.    For example, the 2018 Bylaws allow the Associate Members to vote on new Associate Members, whereas the 2021 Bylaws were written to place that power with the Executive Director.  Exh. 8 at Art. II, Sect. 2.B.; Exh. 9 at Art. II, Sect. 2.B.

318.    For example, the 2018 Bylaws allow the Associate Members to vote on termination of someone's associate membership, whereas the 2021 Bylaws take that power away from the members and place it with the Executive Director.  Exh. 8 at Art. II, Sect. 2.C.3.; Exh. 9 at Art. II, Sect. 2.C.3.

319.    For example, the 2018 Bylaws allow "any three (3) Associate Members" to call for a special meeting of the Associate Members, whereas the 2021 Bylaws take that power away from the members and place it exclusively with the Board.  Exh. 8 at Art. II, Sect. 2.E.; Exh. 9 at Art. II, Sect. 2.E.

320.    For example, the 2018 Bylaws allow the Associate Members to elect an administrator who then convenes the membership meetings, whereas the 2021 Bylaws take that power away from the members and place it with the Board.  Exh. 8 at Art. II, Sect. 2.H.; Exh. 9 at Art. II, Sect. 2.H.

321.    The Defendants knowingly and intentionally failed to follow Missouri law and the KDHX Bylaws when making the above changes in 2018 and 2021 and not allowing the membership to vote on such changes.

322.    For the above reasons, the 2018 Bylaws are invalid and should be declared invalid.

323.    For the above reasons, the 2021 Bylaws are invalid and should be declared invalid.

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

324.    For the above reasons, the class of Annual Members was illegally terminated and should be reinstated with the full rights guaranteed by Missouri law and the Bylaws as written prior to the illegal and improper 2018 and 2021 changes.

325.    Plaintiff Schwarz and the Annual Members were disenfranchised and improperly terminated from the organization.

326.    The Member Plaintiffs continue to be disenfranchised.  The Associate Members are not afforded the rights guaranteed to them in the Bylaws to have proper and full representation on the Board.

327.    Defendant KDHX used the improper and illegal changes to mask the conduct at issue in this lawsuit.

328.    The harm inflicted on Plaintiffs and on KDHX's entire membership is continuing.

329.    Defendants intend to use the 2021 Bylaws in the upcoming 2025 Annual Meeting of the Associate Members including in the nomination process and election.

330.    Defendants intend to use the 2021 Bylaws in any notice, meeting, or vote on Actions Affected by Article IX including the determination of how the meeting is noticed and run, who can speak, who can vote, and how to count the votes.

331.    Actions Affected by Article IX include, but are not limited to:

- The dissolution of the corporation;

- The sale, lease, exchange, or other disposition of any and all radio frequencies owned in whole or in part by the Double Helix Corporation;

- Adoption of plans of merger or consolidation; and

- Repeal of the Articles of Incorporation.

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

332.     Plaintiff Schwarz and the Member Plaintiffs have legally protectable interests in the KDHX Bylaws and in exercising their rights and fully and fairly participating in the governance of KDHX.

333.     A justiciable controversy exists between Plaintiff Schwarz and Defendant KDHX with respect to the 2018 Bylaws, the illegal termination of the Annual Class of members, and RSMo § 355.611.

334.     A justiciable controversy exists between the Member Plaintiffs and Defendant KDHX with respect to the improper changes made in the 2021 Bylaws including the rights taken away from the Member Plaintiffs by Defendant.

335.     By declaring which Bylaws or amendments are valid, the Court will declare the rights, status, and other legal relations among and between the parties.

336.     For the reasons alleged above, the controversy is ripe for judicial determination.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendant on this Count, declare that the termination of the class of Annual Members was in violation of Missouri law, RSMo § 355.611, declare that the amendments in the 2018 Bylaws are invalid, declare that the amendments in the 2021 Bylaws are invalid, order reinstatement of the class Annual Members as described in the Bylaws in effect prior to the illegal termination of the class, award costs, and award such other and further relief as the Court deems just and proper.

## COUNT IX – DECLARATORY JUDGMENT OF VIOLATION OF RSMO § 355.211

337.     The Member Plaintiffs allege and incorporate by reference the above allegations as if fully set forth herein.

338.     On January 31, 2025, at approximately 4:30 pm, Defendants sent an email to nearly all Associate Members (the "Mass Termination Email"). *E.g.*, Exhibit 6.

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

339.     The Mass Termination Email violates Missouri law and the KDHX Bylaws.  It attempts to terminate all recipients as Associate Members without providing any procedure, much less the "fair and reasonable" procedure required by RSMo § 355.211.

340.     RSMo § 355.211, and Defendants' violations thereof, affect the rights, status, and legal relations as an Associate Member of each recipient of the Mass Termination Email including Plaintiffs.

341.     The Mass Termination Email was sent to Plaintiff Bernard.  Exh. 6; Exhibit 10 (Affidavit of Plaintiff Stacy Bernard).

342.     On information and belief, Defendants sent the Mass Termination Email to the vast majority of Associate Members including nearly every Plaintiff.  *See* Exh. 6.

343.     The Mass Termination Email demonstrates that, according to Defendants, every recipient of the email was an Associate Member in good standing on January 31, 2025.  *Id.*

344.     The Mass Termination Email states that each recipient is an "active volunteer." *Id.*

345.     The Mass Termination Email states that Defendants decided to "end" every recipient's volunteer role with KDHX.  *Id.*

346.     The Mass Termination Email continues, "Because you will no longer be in an active volunteer role, your status as an Associate Member will also terminate, effective immediately."  *Id.*

347.     The Mass Termination Email carves out a small group of Associate Members that were not terminated (the "Carve Out").  The only members that remain are an unspecified number of people in "non-content producer / supporter roles."  *Id.*  In other words, the only

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

people who can remain Associate Members of this nonprofit community radio station are those who play no role in its operations. *Id.*

348.    The Carve Out is illogical and lays bare the Defendants' improper motivations in attempting to exterminate the organization's last remaining membership class.

349.    Demonstrating bad faith, unfairness, and unreasonableness, the Defendants included themselves in the Carve Out.

350.    The Carve Out allows the Defendants to control the Associate Member class as well as the Board of Directors, thereby effectively eliminating the last remaining membership class.

351.    There is no justifiable, good faith reason for Defendants to terminate nearly all KDHX members with the push of a button and without any process or procedure.

352.    On information and belief, Defendants terminated the Associate Members in order to take away their voting rights and rig upcoming votes.

353.    For example, a Board of Directors election takes place in February at the "Annual Meeting of Associate Members." Exhibit 9 (2021 Bylaws) at Art. II, Sect. 2, D. At least one Director will be elected by the Associate Members.

354.    Multiple Associate Members were duly nominated by the members to run for election to the Board of Directors in the upcoming Annual Meeting.

355.    Fearing the results of this election, Defendants carried out their mass termination.

356.    Shortly after the mass termination, Defendants sent out notice of the Annual Meeting. Notice was emailed on Saturday, February 8 for a meeting on February 18. Exhibit 11.

357.    Defendants' notice did not include Plaintiff Bernard and those who received the Mass Termination Email. Exhibit 10.

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

358.    As another example, Article IX of the Bylaws requires a "two-thirds" vote of the Associate Members in order for KDHX to sell or dispose of its radio frequency, dissolve the corporation, or adopt a plan of distribution.  Exh. 9 at Art. IX, Sect. 1.B.

359.    Fearing they cannot obtain the requisite two-thirds vote from the membership to effectively end KDHX, Defendants decided to terminate them.

360.    The lack of "ability to support" its volunteers was the purported reason given for ending their roles.  Exh. 6.

361.    Defendants stated that "financial pressures have placed an immense strain on the organization, making it impossible to sustain operations in their current form" including the "ability to support volunteer content producers."  *Id.*

362.    Allowing Associate Members to continue as Associate Members costs Defendants nothing or is insignificant.

363.    The cost to KDHX, if any, for allowing the terminated members to continue as members is the same for any remaining members who were not terminated.

364.    Allowing Associate Members to attend meetings and vote, as required by the Bylaws, costs Defendants nothing except for the cost to provide notice of meetings.  This insignificant cost is decreased by the fact that nonprofits receive discounted pricing from the United States Postal Service.  This insignificant cost is the same for "content producers" who were terminated as it is for the "non-content producers" (e.g. the Defendants) who remain.

365.    For example, Plaintiff Bernard stopped being a DJ in July 2021.  Exh. 10.  The last time she substituted as a DJ was April 2024.  *Id.*  She does not fit Defendants' manufactured definition or artificial distinction of who can remain an Associate Member.  Nevertheless,

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

Plaintiff Bernard was selected as a member to terminate while the Defendant Directors were selected as part of the Carve Out. Ex. 6.

366.    Plaintiff Bernard's level of activity or "inactivity" did not change in any way between July 2021 and January 31, 2025. Exh. 10.

367.    Plaintiff Bernard did not stop volunteering on February 1. Exh. 10. Rather, Defendants determined that she is not allowed to volunteer "after January 31." Exh. 6. Defendants did not allow her to volunteer for the Carve Out roles. Exh. 6, 10.

368.    The same is true for each recipient of the Mass Termination Email. No cause was provided for the mass termination. No recipient stopped volunteering. No procedure was provided to allow them to continue volunteering or challenge the termination scheme. Exh. 6.

369.    Defendants owed each recipient of the Mass Termination Email, including Plaintiffs, a statutory duty under RSMo § 355.211.

370.    Defendants breached this statutory duty by sending the January 31 Email and by taking any other action accompanying or implementing the Mass Termination Email.

371.    Each terminated member, including Plaintiffs, suffered harm as a direct result of Defendants' breaches, including by being terminated as Associate Members and losing membership status at KDHX.

372.    Defendants carried out each termination in bad faith and in violation of Missouri law, RSMo § 355.211.

373.    Defendants carried out each termination without a fair and reasonable procedure as required by Missouri law, RSMo § 355.211.

374.    Defendants carried out each termination with no procedure at all.

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

375.    Defendants' terminations and actions related to the Mass Termination Email were not "fair and reasonable taking into consideration all of the relevant facts and circumstances" as required by RSMo § 355.211.

376.    The relevant facts and circumstances include the allegations in this Petition as well as the suspect timing, motivations, and behavior surrounding the terminations.

377.    The relevant facts and circumstances include an upcoming Board election, upcoming Annual Meeting, and, on information and belief, an upcoming vote on "Actions Affected by Article IX," which includes voting to sell the radio frequency or dissolve KDHX.

378.    The relevant facts and circumstances include Defendants' past pattern of retaliation against members who disagree with Defendants, attempt to exercise their legal rights as members, participate in a lawsuit, or attempt to run for election to the Board.

379.    In the past, Defendants' retaliated against members who were identified. This time, the retaliation was indiscriminate.

380.    Due to Defendants' history of retaliation, the Plaintiffs largely filed anonymously. Two days after this lawsuit was brought on behalf of the Associate Member class, Defendants attempted to terminate all members except themselves or a select few others with the unfair and unreasonable "Carve Out."

381.    The relevant facts and circumstances include the 38-year history of KDHX which allows for members to participate in governing KDHX, elect Directors, and vote on critical issues.  Despite Defendants' misconduct in eliminating the Annual Member class and hollowing out the Associate Member class, the Associate Members continue to have rights afforded by Missouri law and the Bylaws.

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

382.    Further, Defendants did not provide the terminated members, including Plaintiffs, with "fifteen days' prior written notice of the … termination and the reasons therefor."  *See* RSMo § 355.211.2; Exh. 6.

383.    Further, Defendants did not provide "[a]n opportunity for the member to be heard, orally or in writing, not less than five days before the effective date of the … termination."  *Id.*

384.    Defendants' January 31 Email provides no such opportunity and no process or procedure.  *Id.*

385.    The KDHX Bylaws do not set forth a termination procedure that includes notice and an opportunity to be heard as required by RSMo § 355.211.  Exh. 9 at Art. II, Sect. 2.C.

386.    Therefore, RSMo § 355.211.2(1) does not determine the legality of Defendants' actions related to the January 31 Email.  Section 355.211.2(2) is determinative.

387.    Nevertheless, Defendants carried out each termination in violation of any version of the KDHX Bylaws.  To the extent any version of the Bylaws affords discretion to Defendants, Defendants abused their discretion and authority.  *See* Exh. 9.

388.    Finally, although Defendants may have intended to carry out this mass termination at the end of day on January 31, 2025, they failed.

389.    The KDHX Bylaws state that all people who are or were Associate Members in good standing "on January 31" are allowed to vote in the election for the Board of Directors during the annual meeting in February.  Exh. 9, Article III, Section 2.D.1.

390.    Defendants sent the Mass Termination Email on January 31 likely because they did not want the recipients to vote in the upcoming election.

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

391.     However, each recipient of the Mass Termination Email was necessarily an Associate Member in good standing "on January 31."  Defendants refer to each recipient as an "active volunteer" and "sincerely" thanked each recipient for their vital role and efforts.  Exh. 6.

392.     The Mass Termination Email states "**After Friday, January 31, 2025**, the only volunteers who will continue with the station are volunteers in non-content producer / supporter roles."  Exh. 6 (emphasis added).

393.     Defendants admit that all recipients, including Plaintiffs, were "active volunteers" and Associate Members on January 31 and that they remain so until "[a]fter Friday, January 31." *Id.*

394.     Per the Bylaws and the plain reading of Defendants' email, all recipients of the Mass Termination Email are members entitled to vote at the annual meeting.  Exh. 6; Exh. 9, Article III, Section 2.D.1.

395.     Therefore, Defendants' February 8 notice of the Annual Meeting was in violation of the Bylaws.

396.     Defendants' violations of RSMo § 355.211 create a justiciable controversy for which specific relief is sought that is ripe for judicial determination.

397.     Under the Missouri Declaratory Judgment Act, RSMo § 527.020, any person "whose rights, status or other legal relations are affected by a statute … may have determined any question of construction or validity arising under the … statute … and obtain a declaration of rights, status or other legal relations thereunder."

WHEREFORE, the Member Plaintiffs respectfully request that this Court enter judgment in favor of the Member Plaintiffs and against Defendants on this Count, enter judgment declaring Defendants in violation of RSMo § 355.211 with respect to the purported terminations resulting

Exhibit 1

Electronically Filed - CITY OF ST. LOUIS - February 11, 2025 - 12:17 PM

from the Mass Termination Email, enter an Order reinstating all recipients of the Mass

Termination, including Member Plaintiffs, as Associate Members, and for such other and further

relief as the Court deems just and proper.

Respectfully submitted,

/s/ *Benjamin R. Askew*
Benjamin R. Askew, #58933MO
Askew Law LLC
4117 Olive Street
St. Louis, MO 63108
askewlawllc@gmail.com
Phone:  314-566-4459

**Attorney for Plaintiffs**

Exhibit 1