IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | Chapter 11 |
| ) | |
| DOUBLE HELIX CORPORATION, ) | Case No.: 25-40745 |
| d/b/a KDHX COMMUNITY MEDIA, ) | |
| ) | |
| Debtor. ) | |
| ) | |

OBJECTION TO EMERGENCY MOTION FOR FINAL ORDER AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§364(c) AND (d)

  Stacy Bernard *et al*[1] hereby object to Debtor's Emergency Motion for Interim and Final Orders Authorizing Debtor to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§364(c) and (d) (the "Motion").

  The Motion should not be granted for several reasons. As an initial matter, Debtor has submitted no loan documentation in support of its financing request. At this point, the only support for the proposed loan is a Term Sheet with the proposed lender, K-Love, Inc. ("K-Love"), which was not filed with the Court until the day after its Interim Order was entered and which contains several terms designed to steer the sale of Debtor's assets to K-Love. It is no secret that K-Love wants to purchase Debtor's assets, including Debtor's broadcast license. This would leave Debtor with no ability to operate a broadcast radio station, effectively eliminate Debtor's ability to fulfill its charitable mission, and deprive St. Louis of a unique asset.

  The Term Sheet is designed to entrench Debtor with K-Love. It provides for onerous interest. It permits Debtor to use proceeds to facilitate a sale to K-Love. It requires Debtor to take steps necessary to facilitate a sale to K-Love. It provides K-Love with a massive "break-up" fee and other costs. Debtor appears intent on forcing a sale to K-Love by acting in violation of its Articles and By-Laws, and in defiance of its membership and the community it is supposed to serve—without considering alternatives for financing and restructuring. The Term Sheet treats an

---

[1] Stacy Bernard, James Bruce, Antonio Cabanellas, Ryan Cain, Courtney Dowdall, Keith Dudding, William Gelb, Frederick Gumaer, Lee Howland, Charles Jove, Rob Levy, Christopher Schwarz, Darren Snow, and Steve St. Cyr are Plaintiffs in *Bernard, et al. v. Double Helix Corp., et al.*, Case No. 2522-CC00192 (City of St. Louis Circuit Court). Jon Valley is a creditor

CORE/3529721.0002/197846397.1

asset sale to K-Love as a foregone conclusion, and is designed to foreclose Debtor from considering alternatives to a sale, such as a reorganization.

For the reasons discussed below, the Motion should not be granted. Instead, the hearing on the Motion should be continued, so the Court and interested parties can evaluate the promised loan documentation and assess whether the proposed DIP Loan is in the best interest of the bankruptcy estate. As further support for its Objection, Movants state as follows:

**I.     The Motion should be denied or stayed because Debtor has submitted no loan documentation for review**

1. Debtor filed the Motion on Friday afternoon, March 14, 2025, at approximately 3:30 pm. The Motion is sparse. It includes only a summary of the Term Sheet, a copy of which was to be attached as Exhibit A but was not. No other loan documents were presented.

2. A copy of the executed Term Sheet is attached to this objection as Exhibit A for reference.

3. At 11:00 am on Monday, March 17, 2023 (the next business day) this Court entered an oral Interim Order Authorizing Secured Post-Petition Financing Pursuant to 11 U.S.C. §§364(c) and (d). The final Interim Order was entered on March 21. It referenced but did not incorporate the Term Sheet. In fact, the Interim Order expressly preserved objections to the Motion and the Term Sheet. Thus, the Interim Order authorized a loan with no terms whatsoever.

4. The Term Sheet states it is not intended to be a substitute for DIP Loan Documentation. *See* Ex. A, Preamble. However, Debtor has not filed any loan documentation beyond the Term Sheet. Nor, despite several requests, has Debtor provided Movants with any loan documentation.

5. The request for a final order should be denied simply because of the lack of documentation.

**II.    Even considering the Term Sheet only, a Final Order should not be issued.**

6. When presented with valid objections, the court should "carefully scrutinize" the terms of the proposed financing, to ensure compliance with the applicable law and ensure it is otherwise fair. *See In re Interco Inc.,* No. 91-40442-172, 1991 WL 21660 at *2 (Bkrcy E.D. Mo. 1991). Here, even without loan documentation, it is clear the proposed Loan is designed to lock Debtor in with K-Love even further, and prevent Debtor from considering alternative financing

2

and restructuring options.

7. Indeed, the Use of Proceeds section permits Note Proceeds to go toward consummation of a sale to K-Love. Also, the Term Sheet includes numerous conditions *requiring* the Debtor to participate in various steps necessary to sell the station to K-Love. The DIP financing should be separated from any potential sale of Debtor's assets.

8. As will become clear, there is a strong alternative to selling the station to K-Love, which would both satisfy creditors and preserve Debtor's essential purpose of operating a community-driven, independent broadcast station in St. Louis. However, the proposed loan seeks to lock Debtor in with K-Love. The value of Debtor's assets far exceeds its debts. Thus, the issue in the bankruptcy case will be not whether K-Love's offer is the highest, but whether it is the best. Movants believe that they will be able to propose a Plan of Reorganization, rather than liquidation, which will preserve the Debtor for the St. Louis Community. The proposed loan effectively prevents Debtor from doing so.

9. In addition, the 12% interest rate is excessive. Considering K-Love's super-priority position secured by a lien on Debtor's FCC license, (understood to be worth almost $5 million), there is no chance this loan will not be repaid. If a loan is approved, the Court should require a reasonable interest rate, such as the current prime rate.

10. Remarkably, the Term Sheet provides that K-LOVE will receive a break-up fee of $350,000 and expenses not to exceed another $300,000. (Ex. A, "Sale Process"). A break-up fee is designed to compensate a stalking horse for its expenses incurred for serving in that role if it is not the successful purchaser. Reference to a stalking horse agreement or a break-up fee has no place in a DIP loan agreement. And, it is incredible that that K-Love would seek a fee of up to $650,000, simply for extending a no-risk loan of no more than $500,000.

11. The most egregious provision in the Term Sheet is a Carve-Out which is not even explained in the "Carve-Out Expenses" section of the Term Sheet. Rather, it is buried in the "Deposit of DIP Loan Proceeds" section on page 1. This provision requires that proceeds be used to pay K-Love's bankruptcy counsel—on top of the break-up fee and expenses discussed above. It requires significant hubris for a purchaser to propose that a struggling entity pay *your* attorney to pursue an asset that *you* want. In the event the Court approves DIP financing, this provision must be stricken.

12. Overall, the Term Sheet illustrates K-Love's disregard for all others impacted by the process. The proposed DIP Loan illustrates an unfair, unhealthy relationship, in which Debtor and K-Love apparently view the proposed sale as a foregone conclusion. Overall, K-LOVE is driving this case, and the purpose of the bankruptcy filing appears to be forcing a sale of Debtor's license and broadcast tower to K-Love.

13. The ultimate display of this improper relationship is that K-LOVE *actually broadcast* for a period of time on 88.1 this past weekend. There has been no lawful approval of any lease or usage of Debtor's assets. K-Love's premature, unsanctioned broadcasting has caused uproar and confusion, and could impact Debtor's value as a community asset adversely.

14. The proposed financing "presented here goes beyond the protections allowed by the Code to post-petition lenders, ... and which are not necessary for the adequate protection of the interests of the post-petition lenders." *In re Interco Inc.,* No. 91-40442-172, 1991 WL 21660 at *2 (E.D. Mo. 1991)

15. For all of the reasons set forth above, the hearing set for April 16, 2025, should be considered a continued preliminary hearing,

16. If continued interim financing is approved, then the Court should:

1) modify the financing terms to reflect an appropriate and reasonable interest rate, equal to the current prime rate,

2) strike provisions *requiring* the Debtor to participate in various steps necessary to sell the station to K-Love or permitting Note Proceeds to be used towards consummation of a sale to K-Love,

(3) strike the "break-up" and other fees required for K-Love,

(4) strike the provision requiring the proceeds to pay for K-Love's attorneys,

(5) strike any other provisions tying the financing to an asset sale.

WHEREFORE, Movants pray for an order deny Debtor's Motion for a final order authorizing DIP financing and, instead, for a continuance of the hearing on this Motion to a future date, together with such other and further relief as the Court deems proper.

| | |
|---|---|
| ASKEW LAW LLC | DANNA MCKITRICK, P.C. |
| BY: /s/Benjamin R. Askew | BY:/s/A. Thomas DeWoskin |
| Benjamin R. Askew, #58933MO | A. Thomas DeWoskin, #25320MO |
| 4117 Olive Street | 7701 Forsyth Blvd., Suite 1200 |
| St. Louis, MO 63108 | St. Louis, MO, 63105 |
| (314) 566-4459 | (314) 726-1000/(314) 725-6592 fax |
| E-mail: askewlawllc@gmail.com | E-mail: tdewoskin@dmfirm.com |

**ATTORNEYS FOR MOVANTS**

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 9th day of April 2025, the foregoing was filed via the Court's electronic filing system, which sent electronic notification to all counsel of record.

/s/ A. Thomas DeWoskin

5

EXHIBIT A

4914-4016-4146, v. 4
4918-2679-5828, v. 3